Argued July 13, affirmed July 31, 1920, opinion sustained on rehearing April 5, 1921.

## MARSHALL *v.* MIDDLETON.

(191 Pac. 886; 196 Pac. 830.)

**Wills—Executors cannot be Compelled to Redeem Devised Land.**

1. Where purchaser assumed mortgage, but defaulted in payment, devisees to whom he had devised the land could not, upon his death subsequent to foreclosure during period of redemption, compel executors to redeem out of funds belonging to the estate, though will directed that his just debts be first paid, since the property itself is as between decedent and legatees the primary fund out of which a lien must be satisfied.

**Mortgages—Foreclosure Suit Held to Preclude Action on Notes Secured.**

2. The bringing of a suit by the mortgagees, against mortgagors and their grantee who had assumed mortgage, to foreclose the mortgage, constituted an election of remedies on the part of the mortgagees, and thereafter precluded them from bringing an action upon the promissory notes given in connection with the mortgage.

### ON REHEARING.

**Mortgages—Purchaser Assuming Debt has Same Liability as Original Mortgagor.**

3. A purchaser of land who covenants to pay a mortgage then existing thereon becomes, as between himself, the mortgagors, and the mortgagees, the person liable to pay the mortgage; his liability being as great as, but no greater than, that of the original mortgagor.

**Mortgages—Mortgagee must Elect to Foreclose or Recover on Personal Liability.**

4. A mortgagee has the right to elect whether to foreclose the mortgage and secure payment of the debt by a sale of land, or to bring an action against the parties personally liable for the debt, but he cannot do both, and his election to foreclose releases the personal liability for the debt of one who had covenanted to pay it.

**Wills—Devisees Take Subject to Mortgage Which Mortgagee had Elected to Foreclose Before Testator's Death.**

5. Where, before testator's death, the mortgagees had instituted foreclosure proceedings, and thereby released the testator's personal liability on his covenant assuming the mortgage, the devisees of the mortgaged property take it subject to the mortgage debt and cannot compel the executors to pay the debt, though the will directed the payment of testator's just debts.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

This is a proceeding, originally brought in the County Court of Multnomah County, to compel the de-

fendants, as executors of the estate of William H. Marshall, deceased, to pay off and discharge a lien upon certain real estate devised to the claimants by said decedent. The facts shown in the record are as follows:

In April, 1910, W. H. and May S. Hembree purchased a small farm from Mary E. and John N. Rogers, and, being indebted for the purchase price, gave their notes therefor; one of said notes being for the sum of $4,225, bearing interest at 6 per cent, and the other for $775, bearing interest at 7 per cent per annum, and to secure said notes, executed a purchase money mortgage in favor of their grantors for said sums. Decedent purchased the tract from Hembree and wife, subject to the mortgage, which he assumed to pay. Having defaulted in the payment, suit to foreclose the mortgage was brought against Hembree and wife and decedent; and complete service was had during decedent's lifetime. He having died before final decree his executors and heirs at law, including claimants, were made parties, and a decree was rendered foreclosing the mortgage. Upon foreclosure the property was bid in by the mortgagees for the full amount due, and at the time this proceeding was instituted was subject to redemption by those beneficially interested.

When W. H. Marshall died, he left a will providing, in the usual form, for the payment of all his just debts; then bequeathing to claimants some small articles of personal property and the farm in question, and leaving all the residue of his estate to his wife, Bessie M. Marshall.

The appellants, claiming that, under the terms of the will, the tract in question should pass to them unencumbered, brought this proceeding, praying that the executors be required to redeem said property out

of the funds belonging to the estate, which claim being allowed by the County Court, the executors appealed to the Circuit Court, where the order of the County Court was reversed and the proceeding dismissed. From that order the claimants have appealed to this court.    AFFIRMED.

For appellants there was a brief over the names of *Mr. E. K. Oppenheimer, Mr. Frank J. Lonergan* and *Messrs. Davis & Farrell,* with oral arguments by *Mr. Oppenheimer* and *Mr. W. E. Farrell.*

For respondents there was a brief over the name of *Messrs. Clark, Middleton & Clark,* with an oral argument by *Mr. M. H. Clark.*

McBRIDE, C. J.—1. Waiving certain questions as to the mode of procedure adopted by the claimants, we are of the opinion that the executors were not legally bound to redeem from the foreclosure sale, and that the will only passed to the claimants the legal title to the tract in question, subject to the mortgage.

As between decedent and the legatees, the land constituted the primary fund out of which the mortgagees could secure the satisfaction of the debt. The question as to whether the agreement by the assignee to assume and pay off the mortgage rendered him personally liable to the mortgagees, in case they might elect to waive their mortgage and sue upon decedent's covenant with the mortgagors to pay the mortgage, is not controlling; the law being that in cases of this character the rule that the personalty is the primary fund, out of which the liens upon devised property must be satisfied, is reversed as between the executors and devisees, where devised property is

encumbered by a lien not created by the testator, the property itself becomes the primary fund out of which the lien must be satisfied. This is stated clearly by Chancellor KENT in *Cumberland* v. *Codrington,* 3 Johns. Ch., 229, 257 (8 Am. Dec. 492), from which we hereinafter quote.

2. It is needless to say that the assumption of the mortgage by decedent imposed no greater liability upon him, in respect to the mortgage itself, than that imposed upon his grantors. The bringing of a suit by the mortgagees against decedent and his grantors to foreclose the mortgage, during the lifetime of decedent, constituted an election of remedies on the part of the complainants in that suit, and they were thereafter precluded from any action against anybody upon the promissory notes given in connection with the mortgage: *Wright* v. *Wimberly,* 94 Or. 1 (184 Pac. 740).

While the authorities are not entirely uniform, we are of the opinion that the clause in the will of deceased, providing that his just debts should first be paid, cannot be held to apply to the lien created by his grantors upon the land in question. The leading case on this subject is *Cumberland* v. *Codrington,* 3 Johns. Ch. 229, 257 (8 Am. Dec. 492), decided by Chancellor KENT, his opinion being a veritable mine of logic and precedent on this subject.

The distinction between those cases, where a man gives a note and mortgage to secure a debt which he has himself contracted, and those where he purchases land already mortgaged and merely assumes the mortgage is clearly drawn. We quote from the Chancellor's opinion:

"The question in these latter cases seems to be, not merely whether the purchaser has rendered himself liable at law to a suit by the creditor, but which es-

tate is to be deemed the primary fund, and which only the auxiliary. When a man gives a bond and mortgage for a debt of his own contracting, the mortgage is understood to be merely a collateral security for the personal obligation. But when a man purchases, or has devised to him, land with an encumbrance on it, he becomes a debtor only in respect to the land; and if he promises to pay it, it is a promise rather on account of the land, which continues, notwithstanding, in many cases to be the primary fund. The same equity which in other cases makes the personal estate contribute to ease the land, as between the real and personal representatives, will here make the land relieve the personal estates. There is good sense and justice in this principle; and I feel the force of the doctrine, that it requires very strong and decided proof of intention, before the Court can undertake to shift the natural course and order of obligation between the two estates. We have already witnessed the tenacity with which the Court adheres to the natural order of the funds, when a stranger comes in and takes the encumbered land; and the books are full of cases, on the other hand, which subject the personal estates primarily, and as the 'natural fund,' to the payment of debts originally contracted by the party, and even though the debt should be created by mortgage, without either bond or covenant. * *

"The mere covenant with the vendor to pay the mortgage debt does not shift the charge from the fund primarily liable. Most of the cases do not give that effect even to a covenant with the mortgagee. * *

"This series of cases, which I have thus examined, shows very conclusively, that by the English equity system, as it has been declared received for the last thirty or forty years, the purchase of the equity of redemption, in this case, by Sir W. P., with a covenant of indemnity to Williamson, the mortgagor, against the mortgage debt, did not make the debt his own, so as to render his personal assets the pri-

mary fund to pay it. The cases all agree that no covenant with the mortgagor is sufficient for that purpose. There must be a direct communication and contract with the mortgagee; and even that is not enough unless the dealing with the mortgagee be of such a nature as to afford decided evidence of an intention to shift the primary obligation from the real and personal fund.''

Other cases to the same effect are *McLenahan* v. *McLenahan,* 18 N. J. Eq. 101; *Hetzel* v. *Hetzel,* 74 N. J. Eq. 770 (71 Atl. 755); *Gould* v. *Winthrop,* 5 R. I. 319; *Hunt, Petitioner,* 19 R. I. 139 (32 Atl. 204, 61 Am. St. Rep. 743); *Creesy* v. *Willis,* 159 Mass. 249 (34 N. E. 265); *M'Learn* v. *M'Lellan,* 35 U. S. (10 Pet.) 624 (9 L. Ed. 559, see, also, Rose's U. S. Notes).

Nor does a general direction in the will that ''all just debts shall be first paid'' in itself take the case out of this rule in regard to mortgages not created by the deceased: *Hetzel* v. *Hetzel,* 74 N. J. Eq. 770 (71 Atl. 755); *Meyer* v. *Cahen,* 111 N. Y. 270 (18 N. E. 852). Such a provision in a will creates no new obligation on the executor; such payments being required by law in any event. Concerning this provision in a will, Mr. Justice Peckham, in *Meyer* v. *Cahen,* 111 N. Y. 270 (18 N. E. 852), remarks:

''The fact that the testator in the first clause of his will directed the payment of his debts as soon after his decease as could conveniently be done we do not regard as material. Such clause is usually a purely formal one, and works no change in the disposition of the testator's property. The statutes provide that all debts and funeral expenses shall be paid first, and a direction in the will to do what the law requires to be done can throw no material light upon the meaning of the will.''

And Cooper, C., *In re Porter's Estate,* 138 Cal. 618 (72 Pac. 173), observes:

"Some stress is laid upon the direction in the first clause of the will to 'pay all my just debts,' but in this case we attach little importance to the words used in the formal manner in which they are used. They are much like the formal, meaningless terms of endearment and pious phrases printed in the formal part of blanks for making wills."

There is then nothing to indicate in express terms, or by necessary implication, that the testator expected that anything but the usual or, as Chancellor KENT terms it, the "natural" course would be pursued with reference to this encumbrance assumed by him, in case of his death before it should be discharged, which course, as shown by the same learned authority, would be to treat the encumbered land as the primary fund out of which the encumbrance should be extinguished.

We have here no data as to the value or extent of the testator's estate. For aught disclosed by the record a redemption by the executors might exhaust the personalty and leave the widow penniless. It may be that the estate was so valuable that the sum necessary to redeem would be only a small part of the total worth of the estate; we do not know, and cannot ascertain from the record. We can only surmise from the fact that the testator in his lifetime was unable or unwilling to discharge the mortgage, and that his other property was inadequate for that purpose, without material impairment of his finances. It seems quite as probable that decedent intended that his sons should be burdened with any encumbrance that might remain upon the land as that it was his intent the widow should discharge it from the residue of the estate, to her possible impoverishment.

As the plaintiffs have not appeared by guardian in this proceeding, we are justified in assuming that

they are not mere children, but grown-up men, and possibly as capable of bearing the burden of redeeming this property as the widow, and this might well have been in the contemplation of the testator when he made his will.

Plausible arguments may be deduced in favor of plaintiffs' position from the authorities cited by counsel, but most of them may be easily distinguished by the fact that the encumbrances were such as the deceased in his lifetime had created, or had so obligated himself that some privity existed between him and the mortgagee, of a higher nature than any disclosed in the case at bar.

Thus in *Turner* v. *Laird,* 68 Conn. 198 (35 Atl. 1124), excerpts from which are quoted in appellants' brief, the mortgage in question had been placed upon the land by the testator to secure his own debt.

The same condition obtained in *Hayward* v. *Hayward,* 199 Mass. 340 (85 N. E. 158). The court in its opinion does not allude to or criticise the opinion in *Creesy* v. *Willis,* 159 Mass. 249 (34 N. E. 265), so it may be said that as to mortgages assumed but not created by the testator, the rule in that case is still adhered to in Massachusetts.

In *Wilts* v. *Wilts,* 151 Iowa, 149 (130 N. W. 906), the encumbrance was one created by the testator. The same condition existed in the case of *Brown* v. *Baron,* 162 Mass. 56 (37 N. E. 772, 44 Am. St. Rep. 331), and in *Hennegar* v. *Deadrick* (Tenn. Ch. App.), 54 S. W. 138. So it will be seen that none of these cases is in point in the present contention.

The case of *The Home* v. *Selling,* 91 Or. 428, 440 (179 Pac. 261), is not in point here. In that case Jacobs and wife executed a note for $40,000 in favor of the plaintiff, and gave a mortgage to secure the

note and the installments of interest thereon, when they should become due, the mortgage containing a covenant to pay the sums so secured. Thereafter Jacobs and wife sold the mortgaged land to Emanuel May, who, as part of the purchase price, assumed to pay the mortgage, his covenant being as follows:

"The grantee herein, in part consideration for this conveyance, assumes payment of the $40,000, unpaid balance of the first of said mortgages, and the interest accrued and to accrue thereon."

Afterwards May conveyed to the Emanuel May Investment Co. by deed with a covenant against encumbrances, except, among others, the mortgage of $40,000, which "as part of the purchase price" was assumed by the grantee.

The Home Company, the original mortgagee, brought an action at law against May and his grantee to recover an installment of unpaid interest, setting up the facts as above, and claiming $300 as attorneys' fees upon a stipulation in the note providing for the recovery of attorneys' fees in case action or suit should be brought to recover thereon.

Following *Miles* v. *Miles,* 6 Or. 266 (25 Am. Rep. 522), and a number of other cases in this jurisdiction, this court held that the covenant of May and his grantees to assume and pay the mortgage created such a privity between them and the original mortgagor that he was entitled to bring a personal action thereon, and upheld the action for the $3,000 accrued interest, but disallowed the attorneys' fees, Mr. Justice BURNETT observing:

"No allusion is made to the note or any of its incidentals. The agreement is to pay the mortgage, and the action at law against the present defendant is really upon that stipulation."

So here, the covenant of decedent was a personal one to pay the mortgage, and the mortgagee could possibly have brought action upon that covenant, even though it was a purchase money mortgage. But this fact has no bearing upon the relation between the decedent and his devisees in respect to the provisions of his will, and does not militate against the rule announced by Chancellor KENT that, *as between the executor and the devisee,* the mortgaged land, in the absence of an express declaration to the contrary, constitutes the primary fund for the payment of such assumed lien.

On principle, it is difficult to differentiate this case from one where the purchaser of mortgaged property has entered into an agreement with the mortgagor to save him harmless and protect him from the payment of the mortgage debt. On authority as enunciated from time to time in this state, there arose a double incidental liability. The principal liability was that to protect the decedent's grantors from the consequences of their dealings with their mortgagees, if these should ever see fit to waive their security and bring action on the debt secured. From decedent's transaction with the mortgagors there arose (according to *Miles* v. *Miles,* 62 Or. 266 (25 Am. Rep. 522), a contingent personal liability to the mortgagors to pay off the mortgage in case the mortgagees should see fit to demand it of them personally instead of relying on the land.

In *Miles* v. *Miles,* 6 Or. 266 (25 Am. Rep. 522), the writer, as an attorney in the case, contended for what he considered the logical common-law rule, that the assumption of the mortgage by a subsequent purchaser did not of itself create any such privity between the mortgagee and the subsequent purchaser,

as would give a personal right of action against such purchaser; but the contrary doctrine has been so firmly established in this jurisdiction that it is now beyond discussion, and such merely contingent and remote liabilities can hardly be construed into "just debts" within the meaning of a general clause of a will directing the payment of such.

Take this case, where the obligation of deceased was to assume and pay a purchase-money mortgage, which is not shown to contain any covenants for the payment of the debt, it would seem that such agreement would not rise higher than a mere undertaking or assurance that the debt should be extinguished by the sale of the land, and that, so far as the mortgagee and the decedent were concerned, the latter was only collaterally liable, the land being thereby the primary fund. Whether this be true or not, the case there presented is one radically different from the case at bar, where there was no attempt by the mortgagees to hold decedent personally, and where the foreclosure and sale of the land had completely satisfied the terms of the covenant to assume and pay the lien.

It is but fair to say that the case of *Thompson* v. *Thompson,* 4 Ohio St. 333, appears to sustain appellants' contention; but it stands alone, and is opposed to the weight of authority, and, so far as our investigation extends, it is contrary to every authority, both English and American, and ought not to be followed, and particularly here where, in the testator's lifetime, the mortgagees had taken such a course of action as discharged the testator from any legal liability to indemnify his grantors in any event.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BURNETT, BENSON and HARRIS, JJ., concur.

Former opinion sustained April 5, 1921.

ON REHEARING.

(196 Pac. 830.)

In Banc.

On rehearing. FORMER OPINION SUSTAINED.

For appellants there was a brief over the names of *Mr. E. K. Oppenheimer, Mr. Frank J. Lonergan* and *Messrs. Davis & Farrell,* with an oral argument by *Mr. Oppenheimer.*

For respondents there was a brief over the names of *Mr. Johnston Wilson* and *Messrs. Clark, Middleton & Clark,* with oral arguments by *Mr. M. H. Clark* and *Mr. Wilson.*

McBRIDE, J.—In an able and carefully prepared brief counsel challenge the correctness of our conclusion in this cause, and were there any difference of opinion among the members of this court in that respect, some other member of the court would have written the opinion on the present petition.

3, 4. There are certain propositions which are well established by the previous decisions of this court and which may therefore be conceded at the outset. They are these: (1) That by the covenant of deceased to pay the mortgage then existing upon the lands purchased by him he became, as between himself, the mortgagors and the mortgagees, personally liable to pay the mortgage; (2) that his liability as between the parties above named was as great as and no greater than that of the original mortgagor; (3) that since the mortgage was a purchase-money obligation, the mortgagees had an election of remedies (a) to sue

upon the mortgage and foreclose the same, or (b) to bring an action at law to recover the amount due; and (4) that by bringing suit or action their election was complete and they were thereafter precluded from pursuing the remedy not chosen. .

As to the first proposition, it is only necessary to cite *Miles* v. *Miles,* 6 Or. 266 (25 Am. Rep. 522); *The Home* v. *Selling,* 91 Or. 428 (179 Pac. 261), and other Oregon cases following these.

As to the second proposition, see *Smith* v. *Kibbe,* 104 Kan. 158 (178 Pac. 427, 5 A. L. R. 483), and *O'Connor* v. *O'Connor,* 88 Tenn. 76 (12 S. W. 447, 7 L. R. A. 33). The conclusion reached in *Smith* v. *Kibbe* would seem naturally to follow in any state which adopts the reasoning in *Miles* v. *Miles,* 6 Or. 266 (25 Am. Rep. 522), but, as we shall presently show, has no application to the case at bar. The case of *Smith* v. *Kibbe* was not cited in the brief of counsel at the previous hearing but was referred to in the argument and was unfortunately overlooked in our previous opinion. The case of *O'Connor* v. *O'Connor,* 88 Tenn. 76 (12 S. W. 447, 7 L. R. A. 33), lays down no doctrine essentially different from that enunciated by Chancellor KENT in *Cumberland* v. *Codrington,* 3 Johns. Ch. (N. Y.) 229 (8 Am. Dec. 492), so far as applied to the facts here, as will hereafter be shown.

Concerning the third proposition, that the plaintiffs had an election of remedies either to sue to foreclose the mortgage or to bring an action to recover upon the note, or rather the covenant to pay the debt, and that the choice of one remedy precluded them from pursuing the other, see *Wright* v. *Wimberly,* 94 Or. 1 (184 Pac. 740).

With reference to the fourth proposition, see cases cited by Mr. Justice HARRIS in *Oregon Mill & Grain*

*Co.* v. *Hyde,* 87 Or. 163 (169 Pac. 791). In 20 C. J. page 29, Section 20, the text announces the same rule and in copious notes indicates that the overwhelming weight of authority sustains that view.

5. Let us now consider the case in the light of these authorities. When deceased accepted the conveyance and obligated himself by implication to the mortgagees, to pay the mortgage, they thus had two remedies, one to foreclose it and take their chances of getting the remainder of the purchase money out of the land, and the other to bring a personal action against deceased. They could do either; they could not do both. If they brought a personal action to recover the amount due, they released the land from the encumbrance. If they brought a suit to foreclose the mortgage, they released deceased from any personal liability by reason of his covenant.

The mortgagees brought a suit to foreclose the mortgage, and served the testator with summons some time before his death. The very moment they did that, deceased was discharged of all personal liability for the debt and he stood in the same position as he would had he merely purchased the land with the encumbrance upon it without any reference having been made in the deed in respect thereto. This was his legal situation at the time of his death. He owed no personal debt to the mortgagees which they could satisfy out of his personalty or which after they had commenced the suit they could enforce as a personal claim against his estate. They simply had in effect a purchase-money mortgage against the land, nothing more. In this situation the rule announced in *Cumberland* v. *Codrington,* 3 Johns. (N. Y.) 229 (8 Am. Dec. 492), applies in full force. The mortgage was no longer incidental security for a personal debt of

the testator, but the land secured by it was the only thing out of which the mortgagees could collect the amount of the'r debt.

A will takes effect from the date of the death of the testator, not from its execution, and at the death of the testator he owed no personal debt, "just" or otherwise, to the mortgagees. He owed no legal duty to his legatees to warrant their title to the land bequeathed. The general rule is that in a bequest of land covered by a mortgage or other lien not created by the testator, the devisee takes it *cum onere,* unless there is an express direction in the will that the lien be extinguished out of the proceeds of personalty. On this point see cases cited in the original opinion.

The case of *Smith* v. *Kibbe,* 104 Kan. 159 (178 Pac. 427, 5 A. L. R. 483), cited by counsel, is not in point here by reason of the fact that there the testator at his death was still personally liable to the mortgagees for the payment of the mortgage debt. In the case at bar, as heretofore shown, the testator before the time of his death had by the election of the mortgagees been legally released from such liability. In the Kansas case, Haney sold to Bussart and Collier a farm upon which there was a mortgage for $3,000, which mortgage Bussart and Collier assumed in writing to pay. Bussart and Collier sold the land to Smith, the testator, and he expressly assumed and promised to pay the mortgage. Smith died, leaving the land so encumbered to his son, the plaintiff, and the residue of his estate to his widow. In this state of the case it was held in effect that the mortgage debt was personally owing from the testator to the mortgagee at the date of his death, and that since this was the situation the clause of his will directing the payment of his just debts embraced the mortgage

debt and placed upon the executors the duty of extinguishing it out of the personalty of the estate. Note here, however, that it was a personal debt upon which the testator could have been sued at law up to the very moment of his death, which is the very reverse of the circumstances in the case at bar, where there was a claim against the *res* but not against the man.

*O'Conner* v. *O'Conner,* 88 Tenn. 76 (12 S. W. 447, 7 L. R. A. 33), when considered in its entirety, supports the contention of respondents in this case. Thomas O'Conner died intestate, leaving a widow as the sole heir and distributee of his personal estate, and administratrix of the estate as well. Before his death he had bought certain parcels of land upon which there were vendor's liens, and had expressly agreed to pay off these liens as part of the purchase price. He died leaving the liens unpaid and the same were foreclosed and the property was sold to satisfy them. His brothers and sisters, who were heirs to his real property, brought a proceeding in the chancery court to compel the administratrix to reimburse them out of the personalty for the amount realized from the sale of the encumbered realty. The majority of the court in an opinion rendered by Mr. Justice LURTON took the same view expressed by this court in *Miles* v. *Miles,* 6 Or. 266 (25 Am. Rep. 522), and held that the agreement by O'Conner, the deceased, with his vendor to pay the liens existing at the time of the purchase created the relation of debtor and creditor between the original holders of the vendor's liens and O'Conner, and that therefore they were a personal charge against him, saying:

"That the intestate by the acceptance of a deed containing this assumption of the lien debt, made him-

self personally responsible to the creditors holding the lien, will not, at this day, admit of doubt.''

So holding and upon the sole ground that deceased had made the liens his personal debt, the court sustained the claim of plaintiffs and decreed that the widow should reimburse the heirs, evidently to her own impoverishment, as appears from the dissenting opinion. But while laying down and enforcing the rule in all its harshness, Mr. Justice LURTON is careful to make an exception, which is as follows:

''It may be, at the outset, admitted that where lands descend subject to a charge, or mortgage, or lien, not created by the intestate, which was never his personal debt, or one for which he could have been personally liable by the creator, the heir, in such case, would take the land subject to the encumbrance, and could not call upon the personal estate to have his lands exonerated from the burden. This would follow for the obvious reason that the encumbrance was never the debt of the intestate, and his administrator could not therefore be called upon to discharge it.''

The principle enunciated in this excerpt is substantially that which we hold to be applicable here.

Granted for the sake of argument that deceased had made himself primarily liable to the mortgagees when he took the deed from the mortgagors, this liability, whether primary or contingent, it matters not which, had ceased before his death. On and for some time before that event, nothing but the land was liable. It alone stood for the debt, and this being the case the devisees took it *cum onere.* The fact that they were not made parties to the litigation after the death of the testatrix can avail nothing here. The land passed to them immediately upon the death of the testator, subject to certain rights of the executor. If they have any defense or any rights of any kind

which they were entitled to assert in the premises, they can hardly be said to have been foreclosed of them by a suit to which they were not parties; but we do not attempt to pass upon that phase of the controversy. We hold only that they are not entitled to be reimbursed out of the testator's personal estate, for the amount collected by sale of the mortgaged premises.

We adhere to our former opinion.

AFFIRMED. OPINION SUSTAINED ON REHEARING.