[No. 21365. Department One. January 10, 1929.]

*In the Matter of the Estate of* JOHN B. HART, *Deceased.*
LEILA M. HART, *Appellant,* v. WILLIAM B.
MORSE, *et al., Respondents.*[1]

[1]Reported in 273 Pac. 735.

*Arthur E. Griffin,* for appellant.
*F. C. Kapp,* for respondents Hart.
*McClure & McClure,* for respondents Morse.

HOLCOMB, J.—John B. Hart died June 17, 1927, leaving a last will and codicil thereto disposing of community estate. His will and codicil provide:

"First. I direct that all my just debts be paid.

"Second. I give, devise and bequeath to Robert W. Prigmore, of Seattle, Washington, all my law library, together with all books, papers and office fixtures and furniture thereof and used in connection therewith.

"Third. I give, will, devise and bequeath to my two sisters, Alice J. Hart and Emma C. Hart, both of Seattle, Washington, in equal parts all the rest and residue of my property, real, personal and mixed (including property in possession and all expectancies), of every kind and character whatsoever and wheresoever situated.

"Should either of my said sisters depart this life before I do, then I give, devise and bequeath all the rest and residue of my property to the said sister who may be remaining and who may survive me. Should one of these sisters die after my decease and should there then be remaining any of my property, then it is my will that the surviving sister shall take the whole of

my property so remaining to the exclusion of the heirs and legatees, if any, of the said sister so dying.

"Fourth. I hereby revoke, annul and cancel all former wills by me made.

"Fifth. I hereby nominate and appoint Robert W. Prigmore sole executor of this my last will and testament and I direct that my estate shall be settled in the manner provided for in this will; and that no letters testamentary or of administration shall be required, and that no proceedings shall be had in court pertaining thereto other than sufficient to admit this my last will and testament, to probate; and that my estate shall be managed without the intervention of any Court or Courts whatsoever; and that my executor shall never be required to account to any Court or Courts, nor to any person whomsoever, for any of his acts or doings hereunder.

"Sixth. Whilst no provision is made in this my last will and testament for my beloved wife, Leila, yet I wish to state that this will is executed with her full knowledge and approval."

CODICIL

"First. Owing to the death of Robert W. Prigmore, which occurred subsequent to the execution of said will, I hereby annul and cancel the bequest made to him, as found in the second paragraph thereof, and I will, devise and bequeath the property mentioned in said second paragraph to my sisters, Alice J. Hart and Emma C. Hart, being the beneficiaries mentioned in the third paragraph of said will, and subject to the same terms and conditions as in said third paragraph contained.

"Second. I direct that the fifth paragraph of my will be changed because of the death of said Robert W. Prigmore and in his stead I nominate and appoint my nephews, William B. Morse and R. H. Conner, as executors of my said last will and testament, and with this sole exception the other provisions of said fifth paragraph shall remain in force and effect.

"Third. In the third paragraph of my said will is found the following clause: 'Should one of these sisters die after my decease and should there then be re-

maining any of my property then it is my will that the surviving sister shall take the whole of my property so remaining to the exclusion of the heirs and legatees, if any, of said sister so dying.' In explanation of this clause it is my will and intent that these sisters of mine shall have the right, during their lives, to sell and dispose of any part or portion, or all of my property received by them, and that the purchaser thereof shall take and receive a full title thereto, free from any claim of either of the sisters that may survive, but should any portion of the property or its proceeds be remaining at the death of either of the sisters, then the surviving sister shall take and receive the same as in the will provided; and in case any of the property be so sold, then they shall have the right to use the same in such manner as they may see fit, or they may invest and reinvest the proceeds thereof; and should there be remaining any portion of the proceeds on the death of either sister, then the clause herein quoted shall operate upon the same.''

The will was dated February 5, 1909, and the codicil September 13, 1924, both at Seattle, Washington.

In probating the estate, appellant, the surviving widow of the testator, disagreed with the beneficiaries, Alice J. and Emma C. Hart, as to the construction of the will.

Appellant contended and now contends that the debts should first be paid from decedent's property and that the beneficiaries were entitled to that part of decedent's property remaining after payment of decedent's just debts.

The beneficiaries and executors claimed and still contend that the debts must be paid from the community property of decedent and appellant, and that the other beneficiaries would be entitled to all of decedent's property after the debts and expenses were paid from the community property.

Upon a petition in the lower court for directions construing the will, that court entered a decree, sustaining

the contention of the beneficiaries and the concurring executors, and against that of appellant.

After eliminating separate property of the value of $58,860, stricken from the inventory of the estate as being the separate property of the widow, the appraised value of the community estate of the spouses aggregates $188,409.46. Against this are mortgage debts consisting of two mortgages each for $25,000, both executed by both spouses; general unsecured claims aggregating $18,977.46; and the estimated administration expenses amounting to $15,000.

The question for our decision is whether, under the provisions of the will, all the debts should be first paid from decedent's property, thus passing to appellant her community interest in the estate free and clear of all the community indebtedness.

Appellant contends that this case is controlled by a decision in *Redelsheimer v. Zepin*, 105 Wash. 199, 177 Pac. 736.

The provisions of the will construed in that case were very peculiar, and the decision *sui generis*.

The will in that case provided that the executors, as soon as they had sufficient funds in their hands belonging to the testator's estate, should pay his funeral expenses, etc., and all just debts, demands and charges of every kind and nature properly chargeable against testator's estate. There was another clause declaring the reasons of the testator for not leaving more of his estate to his wife than he did by will; he, in fact, giving to her only her own one-half community interest—which he had no power under our statute to do—and bequeathing certain personal property to her.

This court sustained the judgment of the trial court that the will

" '. . . charged the payment of all his debts and obligations, including the debts and obligations of the

marital community of himself and his wife, Glorvina Redelsheimer, upon his one-half interest in the community property of the said marital community . . . .'"

In the decision this court referred to the statute, now Rem. Comp. Stat., § 1342, which provides:

"Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts."

As to the contention of appellants in connection therewith, that, because there was no clear provision in the will that the debts should be paid from the community interest of the testator, and because the terms of the will did not clearly show the intention of the testator that his share of the community estate should pay all the debts, therefore the debts should be borne ratably by the whole estate and the balance of the estate, after the debts were paid, distributed according to the terms of the will, we held that it was clear from the provisions of the will that all just debts, demands and charges of every kind and nature were properly chargeable against his estate; that the testator intended that his estate should pay all the debts of the estate, both separate and community, and that the balance of his estate should be distributed as provided in the will. We laid special emphasis upon those clauses referring to "my" estate.

That decision goes to the extreme limit in construing such testamentary provisions, and we do not desire to extend its application.

There are no such provisions in the will before us now. The first clause of the will is merely a general direction by the testator that all his just debts be paid.

That would be compulsory under our statutes at all events, without any direction.

"Nor does a general direction in the will that 'all just debts shall be first paid,' in itself take the case out of this rule in regard to mortgages not created by the deceased. *Hetzel v. Hetzel,* 74 N. J. Eq. 770, 71 Atl. 755; *Meyer v. Cahen,* 111 N. Y. 270, 18 N. E. 852. Such a provision in a will creates no new obligation on the executor; such payments being required by law in any event. Concerning this provision in a will, Justice Peckham, in *Meyer v. Cahen, supra,* remarks:

" 'The fact that the testator in the first clause of his will directed the payment of his debts as soon after his decease as conveniently could be done we do not regard as material. Such a clause is usually a purely formal one, and works no change in the disposition of the testator's property. The statutes provide that all debts and funeral expenses shall be paid first, and a direction in the will to do what the law requires to be done can throw no material light upon the meaning of the will'." *Marshall v. Middleton,* 100 Ore. 247, 191 Pac. 886, 196 Pac. 830.

*In re Porter's Estate,* 138 Cal. 618, 72 Pac. 173, was then quoted further upon such formal provision of a will.

This court has also so decided in a case where by such formal provision, the proceeds and avails of life insurance, otherwise exempt, were attempted to be appropriated to the payment of community debts. *German American State Bank v. Godman,* 83 Wash. 231, 145 Pac. 221.

Appellant distinguishes that decision from the issue here because of the statutory exemptions there involved. But the principle is the same, as to such common forms, regardless of the issue involved. There was just as good reason, in law and common justice, for giving force to such a testamentary provision there, as here.

Construing a similar formal first provision in a will

in a state having community property, where the testa-
tor declared all his property community estate, de-
cided by the Court of Civil Appeals of Texas, *Rich-
ardson v. McCloskey,* 261 S. W. (Tex. Civ. App.) 801,
that court held such a provision purely formal, un-
necessary, because the law charges a testator's debts
against his estate whether or not he makes such pro-
vision in his will, and not intended to bind his one-half
community interest with the payment of the entire
community debts. This case was reviewed by the Texas
commission on appeals and its decision approved by
the supreme court, reversing the district court of ap-
peals upon other questions, but not disturbing the
above decision. *Richardson v. McCloskey,* 276 S. W.
(Tex. Civ. App.) 680.

Appellant further contends that additional
meaning is thrown upon the intention of the testator
by the clause in his will, after the provisions for the
payment of his just debts and after a specific bequest
of his library, providing:

"I give, will, devise and bequeath to my two sis-
ters, . . . all the rest and residue of my property,
real, personal and mixed, . . ."

Texts and authorities from many writers and courts
are cited to the effect that a gift of property by a resid-
uary clause blending realty and personalty, generally
charges the realty with the payment of debts in case
the personalty is insufficient, especially where coupled
with a direction to pay debts; and where pecuniary
legacies are given generally and there is a gift of the
residue of both real and personal estate, the whole
residue being granted in one mass, it is now the settled
rule in England and Canada, and in most of the United
States, that the legacies are charged upon the entire
residue, including the residuary realty, unless a con-

trary intention on the part of the testator appears from the will as a whole.

Without citing or discussing those texts and authorities, we can see no application of the principles therein announced to the construction of this will. It is true that the debts must first be paid out of the testator's absolute property, as a general proposition. Where, as here, however, the testator had nothing but community property and community debts, as to which the surviving spouse is also liable and her share of the community estate is liable, and the state statutes subject all the property, real and personal, to the payment of debts, those rules can have no application.

It is true, as argued by appellant, citing many authorities, that it is the duty of the courts, in construing wills to ascertain, if possible, from the terms of the will itself, the true intent of the testator and to give it effect if legally possible. We have a statute so commanding and we have often followed that principle. Rem. Com. Stat., § 1415; *Webster v. Thorndyke,* 11 Wash. 390, 39 Pac. 677; *Shufeldt v. Shufeldt,* 130 Wash. 253, 227 Pac. 6, and cases there cited; *German-American State Bank v. Godman, supra.*

Coming now to examine the will in question and the codicil, and giving effect to every expression in it, what do we find?

First, a formal direction for the payment of all just debts. The law requires their payment regardless of any testamentary provision therefor.

Second, a bequest of his law library, office fixtures and furniture to another; and third, the devise and bequest to his two sisters, Alice J. and Emma C. Hart, in equal parts, of all the rest and residue of his property, real, personal and mixed, including property in possession and all expectancies, of every kind and character whatsoever and wheresoever stituated.

It is then provided that, in case either of the sisters should die before the testator, then he gave, devised and bequeathed, all the rest and residue of his property to the sister who might be remaining and surviving the testator.

Should one of these sisters die after the deceased, or testator, and there should then be remaining any of the testator's property, it was his will that the surviving sister should take the whole of his property so remaining, to the exclusion of the heirs and legatees, if any, of the sister so dying.

There was then the appointment of an executor, and a provision that the will should be a nonintervention will.

The sixth, last and a very significant provision of the will is this:

"Whilst no provision is made in this my last will and testament for my beloved wife, Leila, yet I wish to state that this will is executed with her full knowledge and approval."

The death of the executor nominated in the original will made necessary a codicil, and the testator then found it convenient to make more explicit the third paragraph of the original will.

In no part of the will or codicil did the testator indicate or expressly say that he desired his wife to take her community interest in the property free from the community debts of both of the spouses.

Doubtless, Mr. Hart, who, as this court knows and as counsel all agree, was a lawyer of rare ability, was perfectly familiar with and able to understand all our community property law and decisions and our statute relating to wills, undoubtedly anticipated that he would be possessed of considerable estate at the time of his death and he had always carefully and generously provided for his wife between whom and himself

there was the greatest harmony. Toward her, he was ever considerate and generous. (See *In re Hart's Estate,* 149 Wash. 600, 271 Pac. 886.)

As a very competent lawyer, Mr. Hart could easily, had he so desired, have provided in his will that the community interest in the estate which would be taken by his wife, as the surviving spouse, should be taken free of community debts, but he did not so provide.

He knew that all the property he had power to bequeath and devise by will was his undivided share in the community property. He also knew that upon his death the community would be dissolved and under our statute the community half of the surviving spouse would descend and vest immediately in the surviving spouse, subject, however, to the payment of the community debts. He also knew that all his debts were, and would be, community debts, presumptively. Had he left any separate debts, under the terms of his will, such debts would, of course, be deducted from his estate before it passed to legatees and devisees; but he left no such debts.

We therefore conclude that the terms of the will before us are not like those in the *Redelsheimer* case and this case is not governed by that.

Our conclusion therefore is that appellant, as surviving member of the community, and the sisters of decedent, as residuary devisees and legatees, take the property to which they are entitled, subject to the community debts.

■■ The community debts also include the mortgage indebtedness upon the real estate. As stated before, those encumbrances were executed by both spouses. They are therefore indebtedness against both jointly and each severally. *McKee v. Whitworth,* 15 Wash. 536, 46 Pac. 1045; *Northern Bank & Trust Co. v. Graves,* 79 Wash. 411, 140 Pac. 328; *Shannon v.*

*Prall,* 115 Wash. 106, 196 Pac. 635; *Karatofski v. Hampton,* 135 Wash. 139, 237 Pac. 17.

In this case one of the mortgage creditors duly filed its claim for $25,000, which claim has been allowed. The other mortgage creditor did not file its claim, presumably relying wholly upon the security.

Being community indebtedness, the claim of the mortgage creditor which has been duly allowed is to be paid as and when other allowed claims should be paid, according to their rank and priority. As to the mortgage indebtedness which was not filed as a claim against the estate, it is nevertheless an individual personal debt of testator's for which he would be bound personally and severally. His will directed that all his just debts be paid. The case of *Davis v. Brown,* 112 Wash. 121, 191 Pac. 1098, cited and relied upon by the executors herein does not fit such a situation. In that case the following quotation will show the condition there existing:

"Among other real estate belonging to the estate is an undivided one-half interest in Lots 2 and 3, block 22, of A. A. Denny's addition to Seattle, purchased by the testator in his lifetime, and then and now subject to mortgages aggregating $160,000 on the whole, no part of which were assumed in the purchase. So that, while the testator was not personally liable for any part of the debts secured by these mortgages, and claims based thereon were not and could not have been proven as debts against his estate, yet the undivided one-half interest in the property now held by appellants as trustees is subject to such indebtedness in the principal sum of $80,000, and may be taken in payment thereof by foreclosure, if default in payment be made, though the estate cannot be held for any deficiency."

It will be observed that in that case testator had not signed the note secured by the mortgage, nor had he

494

in any way assumed or agreed to pay the indebtedness. That differentiates the case from this.

The judgment of the lower court is therefore affirmed, with directions to further proceed in the execution of the will and administering the estate in accordance herewith.

FULLERTON, C. J., MITCHELL, TOLMAN, and BEALS, JJ., concur.

[1]Reported in 273 Pac. 739.