[No. 35218. *En Banc.* May 5, 1960.]

*In the Matter of the Estate of* L. KENNETH SCHOENFELD, *Deceased.*
RUTH G. BLETHEN, *as Executrix, Respondent,* v. SUPERVISOR
OF THE INHERITANCE TAX DIVISION FOR THE STATE TAX
COMMISSION, *Appellant.*[1]

*The Attorney General* and *Henry W. Wager, Assistant,* for appellant.

*Monheimer, Schermer & Mifflin,* for respondent.

ROSELLINI, J.— ██ The question in this case is: Can community debts of a deceased husband and surviving wife be charged against the separate property of the decedent before the community property is exhausted? The answer is: they cannot.

L. Kenneth Schoenfeld died testate on March 22, 1954, a resident of King county. There was in the estate community property subject to debts in the amount of $73,-865.48, and separate property of the decedent amounting to $188,510. The community debts totaled $154,992, and the

[1]Reported in 351 P. (2d) 935.

funeral expenses $2,334.69. There were separate debts of the decedent in the amount of $9,780.33.

For the purposes of computing the inheritance tax, the state of Washington first applied the community property to the payment of the community debts and funeral expenses. This exhausted the community property, and the unpaid balance of such debts and funeral expenses was charged to the separate property. The respondent success-fully challenged this ruling in the superior court, with the result that her inheritance tax was reduced $810.39. This was achieved by allocating the community debts between the community and separate property in the ratio that the community property bore to the whole property. The reason this method resulted in a lesser tax is immaterial to the issue involved in the appeal.

The state has appealed, contending that the ruling of the decision was contrary to statute and to the well-estab-lished principles of community property law; and with this we agree.

RCW 11.04.050 provides that, upon the death of either spouse,

" . . . one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts. . . ."

It is well established that the whole of the community property shall be administered for the purpose of collecting the community assets and paying the community debts. *Ryan v. Fergusson*, 3 Wash. 356, 28 Pac. 910; *Stanton v. Everett Trust & Sav. Bank*, 145 Wash. 165, 259 Pac. 10.

RCW 11.04.020 and .030 provide for the distribution of personal property subject to the debts of the decedent.

As this court said in *Columbia Nat. Bank v. Embree*, 2 Wash. 331, 26 Pac. 257, the liability of the community prop-erty for community debts and the liability of separate prop-erty for separate debts would have existed without the stat-ute, and the express mention of them must have come from "inadvertence or an excess of caution."

There is nothing in the language of RCW 11.04.020, .030, or .050 which would indicate that the legislature intended to enlarge the liability of community property for separate debts or that of separate property for community debts. The fundamental principles which determine the priority of claims were clearly stated by this court in *In re Hill's Estate*, 6 Wash. 285, 33 Pac. 585, and have never been departed from, insofar as we have been able to ascertain. The court in that case said:

"Where the separate property of the deceased, and the community property of the deceased and the surviving spouse, is administered, the same should be kept separate, for the separate debts of the deceased would be primarily a charge upon the separate property, and the community debts would be primarily a charge upon the community property. In case there should not be enough of the separate property to pay the separate debts, the deficiency could be made good out of the decedent's interest in the community property, should there be anything remaining after the payment of the community debts, and the same would be true with regard to a deficiency of the community property, as after the separate debts had been paid the remainder of the separate property would be liable for the community debts so remaining unpaid. . . ."

The rule in a case such as this, as in other cases of primary and secondary liability, is that the creditor must exhaust his remedy against the primary fund before he can resort to the secondary fund. See *Butterworth v. Bredemeyer*, 74 Wash. 524, 133 Pac. 1061.

Of course, a decedent's will may provide that all of the debts of the estate, including the community debts, shall be paid out of his share, and that direction will be honored so long as the estate is adequate to pay those debts. *Redelsheimer v. Zepin*, 105 Wash. 199, 177 Pac. 736. Otherwise, the surviving spouse is liable for his pro rata share of the community debts. *In re Hart's Estate*, 150 Wash. 482, 273 Pac. 735.

While it was at first argued that the community estate should not be liable at all for separate debts, this court many years ago laid down the rule that, after payment of com-

munity debts, the share of the community property belonging to the decedent can be reached by separate creditors. *Columbia Nat. Bank v. Embree, supra.* The rule has been consistently followed. *Kelley v. Butler,* 182 Wash. 310, 47 P. (2d) 664; *In re McHugh's Estate,* 165 Wash. 123, 4 P. (2d) 834; *Crawford v. Morris,* 92 Wash. 288, 158 Pac. 957. The reasoning which led to this conclusion was that the legislature has provided for the division of community property between the spouses on the death of either, and that, once the community debts have been paid, the balance, distributed to the surviving spouse and to the estate of the decedent, becomes separate property to which a separate debt of the owner can attach.

It has never been held, and no logical or equitable reason appears why it should be held, that the share of the survivor should be subject to the separate debts of the decedent. It is plain, therefore, that to allow the proration of community debts between the community and separate property would give to community creditors an advantage which the separate creditors cannot enjoy; for, while community debts can be collected out of the whole of the separate estate, separate debts can only be collected out of one half of the community estate. Suppose, for example, an estate consisting of $10,000 community property and $10,000 separate property, with a community indebtedness of $12,000 and a separate indebtednes of $8,000: If the debts were prorated according to the respondent's theory, $6,000 of community debts would be charged against community property and $6,000 against separate property. By the same token, $4,000 of separate debts would be charged against separate property and $4,000 against community property. But the surviving spouse's half of the community property is not subject to separate debts, and only $2,000 would be available to the separate creditors from this fund. The result would be that the community creditors, whose primary fund was $2,000 short of their claims, would be able to collect these claims in full, whereas the separate creditors, whose primary fund was $4,000 greater than their claims, would suf-

fer a $2,000 loss, while the surviving spouse would receive a $2,000 windfall.

The inequity of this result demonstrates very clearly the validity of the principles stated in *In re Hill's Estate, supra*.

Those principles are in accord with the fundamental theory of community property law—that the community is an entity which should be held liable for the debts contracted for its benefit to the full extent of its property and resources, but that the community should not be held to pay a debt which was contracted by one member in his separate capacity and the consideration for which has not benefited the community.

Quincy de Funiak, speaking on this subject in his exhaustive treatise on community property, says:

"The principle is recognized and followed in many of our community property states that, upon the dissolution of the marriage by the death of one of the spouses, the community property is subject to the payment of the community debts charged against it. Certain of the community property may be exempted by statute from liability for the payment of debts, as for example, life insurance proceeds or homesteads constituted from community property. Strictly speaking, the amount of the community property which is to be partitioned cannot be determined until the community debts have been discharged, but if, before such discharge, half of the property denominated community property actually comes into the possession of the heirs entitled thereto, they take it subject to the payment of the community debts. At bottom, their half should be liable only for half of the community debts, so that if claims of community creditors are recovered from that half of the community property in the hands of the heirs, the heirs should be entitled to adjustment thereof from the other half of the community property. The surviving spouse, likewise, is liable for half of the community debts by reason of the share of the community property in his or her hands. This is true of a surviving wife as of a surviving husband. The statutes are usually rather vague, merely prescribing that the community property passes subject to liability for the community debts. The difficulties brought about by such a situation indicate the wisdom of the Spanish community property system in considering that the amount and extent of the

marital gains were not determinable until expenses and losses had been deducted. . . . " de Funiak, Principles of Community Property, 599, § 211.

On the other hand, separate creditors are equally entitled to look to the funds of their debtor which have not been acquired through the efforts of the community and in which the community has no equity equal or superior to theirs.

The only justification for proration which the respondent advances is that it would tend to prevent the total disinheritance of a wife in a case where the community assets did not exceed the community liabilities and the husband, by will, left all of his separate property to others. The legislature has seen fit to give the husband this privilege, and it is not the function of this court to devise ways of frustrating the exercise of it, particularly when the device employed would upset a fundamental principle of the common law—a principle solidly founded in reason and justice.

The respondent makes some contention that the decedent's separate estate and the community estate are jointly liable for community debts. The only authority she cites for this proposition is *First Nat. Bank of Ritzville v. Cunningham*, 72 Wash. 532, 130 Pac. 1148, a case in which the claimant had obtained a judgment against the husband alone on a note which he alone had signed, evidencing a community indebtedness, and the court held that the claimant was not required to abandon his suit against the husband when his wife died and file a claim in her estate in order to enforce his judgment against the community property. The court said that the judgment could be satisfied out of either the husband's separate estate or the community estate. Whether the separate estate should ultimately have been reimbursed by the community estate was not a question in that case, and was not discussed. The case is not authority for the proposition advanced by the appellant in this case— that community debts should be charged proportionately against the community property and the separate property.

The trial court erred in prorating the community debts between the community and separate property; it should

have charged those debts first against the community property, and when that property was exhausted, against the separate property.

The parties are in disagreement as to the proper fund from which funeral expenses should be paid. RCW 11.76.110 gives such expenses a position of priority in the payment of the debts of the estate, and in this instance it is immaterial whether they were paid from the community or separate estate, since the community estate was exhausted by other community debts, and the amount of the tax cannot be affected by the allocation of the funeral expenses. If they are given priority as a community obligation, the amount of other community debts charged against the separate estate will be correspondingly increased, and if they are a separate obligation, the effect will be the same.

The judgment is reversed.

ALL CONCUR.