**MATTHEWS et al. v. JONES et al.**

No. 2918.

Court of Civil Appeals of Texas. Eastland.

Feb. 1, 1952.

Rehearing Denied Feb. 22, 1952.

R. W. Haynie, Abilene, William Blanton, Odessa, for appellants.

Wagstaff, Harwell, Wagstaff & Alvis, Abilene, Coke & Coke, Dallas, for appellees.

COLLINGS, Justice.

This suit was brought by Ruth Legett Jones, widow of Percy Jones, against Edith Jones and Julia Jones Matthews, daughters of Percy Jones, and John A. Matthews, husband of Julia, individually, and the First National Bank in Dallas, Texas, Edith Jones, Julia Jones Matthews and herself, as executors and trustees under the will of Percy Jones, deceased. The suit involves the construction of the will of Percy Jones, deceased, consisting of six holographic writings which disposed of his one-half of the community property of himself and his wife and of his separate property and created two trusts, one for his widow and the other primarily for their two daughters, but with contingent interests in favor of their issue.

Percy Jones was a resident of Taylor County, Texas, where he died on February 11, 1951. He left an estate consisting largely of ranch lands, oil properties, bonds and cash. His separate property was valued at approximately $15,500,000 and his one-half interest in the community property at approximately $750,000.

On January 27, 1947, Percy Jones executed the holographic will in question, which, together with five holographic codicils executed by him on the respective dates indicated, are set out as follows:

"(1) This will is holographic and is the last will and testament of me, Percy Jones of Abilene, Taylor County, Texas. I appoint the First National Bank in Dallas, Dallas, Texas to be the Executor and Trustee of this my will without bond, and request that no action be taken by the Court with reference thereto except that necessary to probate the will, return inventory, and make appraisements. I hereby give, devise and bequeath my interest in Percy Jones—Separate account which is my separate property, together with one-half of all my other property which is my community property to the First National Bank in Dallas, Texas, Upon Trust to wind up and close any business carried on by me, to pay my funeral and other expenses, also debts and death duties, and I hereby authorize my Executor and Trustee to hold for investment the securities and property held by me at my death or to sell same and to purchase and hold for investment and sell when desirable by them, any form of obligation, of common, preferred or other stock or other participation, interest, certificate or evidence of interest of or ownership of or in any real estate, corporation, company, firm, business, utility or authority or indebtedness thereof, private, quasi public or public or of any State, province, county, department, municipality or other governmental unit or instrumentality including U. S. Federal obligations of any kind, character or description, provided same is limited to securities issued, and real estate located, in the United States and, or Canada. Securities to be only in United States or Canadian corporations, or ownership or governments. Upon Trust.

"(2) To pay out of income of the Trust to my wife, Ruth Legett Jones, ten thousand ($10,000.00) Dollars each and every year as long as she shall live, in quarterly installments, and to deed to her my community interest in our residence at 758 Sayles, Abilene, Texas, together with all furniture and improvements and grounds for her own use and benefit with right to sell and convert into funds for her own use at any time.

"(3) The balance of all income to be divided equally between my daughter, Edith and my daughter, Julia, same to be paid monthly, quarterly, semi-annually, or annually, as my Executor deems best. However, should this income payment in one year to Edith and Julia fall below $10,000.00 each, then my Executor is to have the right and authority to make up the deficiency out of principal, should Edith and Julia request same.

"(4) This Trust to be in effect for Fifty (50) years or until the death of my wife, Ruth Legett Jones, but not less than Fifty (50) years, and at that time, my daughter, Julia and daughter, Edith shall stand possessed of said Trust equally for their own use and benefit absolutely. Provided ·that should either of my children, Julia or Edith die before the expiration of the Trust, then the income is to be paid their direct heirs per stirpes, and should either Julia or Edith die without issue before the expiration of this trust; then I give devise and bequeath her share of the Trust at the time of her death to the survivor.

"(5) My Executor' is fully authorized to execute all conveyances, releases, conveyances proper, necessary to vest all title to such property to the purchaser and such purchaser shall not be required to see to the application of such funds which are proceeds of such sale.

"(6) My executor shall have the right and authority to lease any real estate for oil and gas or other minerals on such terms and conditions as to him as it may seem best and for such length of time as to him as it may seem best.

"(7) My Executor as Executor herein named shall be testamentary trustee as well as Executor.

"(8) The Trust income as stated to be paid to beneficiaries in earnings from the capital of the Trust; profits and losses in the sale. of securities and other assets to affect capital only and not to be paid out or charged to earnings.

"(9) This will is wholly written by myself. I hereby revoke all former wills and testamentary dispositions made by me.

"In witness whereof I have herewith set my hand this 27th day of January, 1947.

"Percy Jones"

The codicils were as follows:

"Codicil No. 1.

"Instead of my Executor and Trustee holding my estate intact for 50 years from date of my death; it is my wish and desire that 25% of the principal of my estate be distributed to my beneficiaries, Edith and Julia, 10 years after my death, and another 25% to be distributed to them at the end of 20 years after my death, the remaining 50% to be held the full 50 years as set out above.

"Witness my hand this 28th day of January, 1947.

"Codicil No. 2.

"Clarifying paragraph 1 of my will. My Executor or Trustee shall have the authority to invest in American or Canadian securities and property only although any such investments or property shall be of a character in which fiduciaries are not permitted to invest by law unless specifically authorized so to do.

"Witness my hand this 29th day of January, 1947.

"Codicil No. 3.

"Referring to Paragraph 1 of this will, I wish to appoint Julia Jones Matthews and Edith Jones, my two daughters, and the First National Bank in Dallas, Dallas, Texas, as Co-Executors and Co-Trustees of this will and my estate instead of the First National Bank in Dallas alone, and wish to direct further that in the event of death, either before or after me, or of the resignation or failure to act, of either Julia Jones Matthews or Edith Jones, or both, that no successor executor or trustee shall be appointed in her or their place or stead so long as any Executor or Trustee named by me in this Codicil of my last will and testament are acting as such Executor or Trustee.

"I declare this to be a 3rd Codicil to the last will and testament dated January 27, 1947, and following Codicil No. 1 dated January 28th, 1947 and Codicil No. 2 dated January 29th, 1947.

"Witness my hand at Abilene, Texas, this 18th day of February 1948.

"Codicil No. 4.

"It is my further wish and desire that the life of this will shall be limited to 21 years after the death of Julia Jones Matthews or Edith Jones, whichever dies first but in no event to run longer than the 50 years stated in Paragraph 4.

"I declare this to be a 4th Codicil to my last will and testament dated January 27th, 1947.

"Witness my hand at Abilene, Texas, this 18th day of February, 1948.

"Codicil No. 5.

"Instead of leaving all my separate property as stated in Paragraph 4 of this will to my children, Edith Jones and Julia Jones Matthews, it is my desire to change this to read one-half (1/2) of my separate property. The other half to be in a separate trust under this will with Mrs. Percy Jones as additional Executor under this will and Trustee of both Trusts, in addition to Edith Jones, Julia Jones Matthews, and the First National Bank in Dallas, Dallas, Texas, who are all to be Trustees under both Trusts. The income from this separate trust to be paid to my wife, Mrs. Percy Jones, as long as she shall live, however, she is to have the right to appoint or dispose of this (1/2) one-half of the separate property as she sees fit or proper. This division of the separate property will eliminate the $10,000.00 income payment to my wife, Mrs. Percy Jones, as stated in Paragraph 2 of this will.

"This will to run for the length of time as stated in Codicil No. 4, if legal in Texas. If this limit of will is not in conformity with the laws of Texas, then this will is to run as long as is permissible under the laws of Texas.

"As in Codicil No. 3, no Executor or Trustee need be appointed in place of Mrs. Percy Jones at her death or resignation of the duties under this will.

"Witness my hand this 22nd day of April 1948, at Abilene, Texas.

"Percy Jones."

The question before the trial court was whether the payment of debts, expenses of administration and taxes, including federal estate taxes, and inheritance taxes, should be borne entirely by the daughters' trust or apportioned in some manner between such trust and the trust created in codicil No. 5 for the benefit of the widow, Mrs. Ruth Legett Jones.

Judgment was entered in the District Court exonerating one-half of the separate property left in trust for the widow from payment of expenses of last illness and funeral, indebtedness of decedent for benefit of separate property, one-half of community indebtedness, expenses of administration of entire separate property and one-half of the community estate, the federal estate tax, all inheritance taxes, and charging the one-half of the community estate and one-half of the separate property left in trust for the children with the payment thereof. Edith Jones, Julia Jones Matthews and John A. Matthews have appealed from such judgment.

It is urged by appellants that the will of Percy Jones "made no provision, ambiguous or otherwise, as to apportionment of the burden of debts, expenses of administration or taxes among the beneficiaries" and that "the court should have placed the burden, as a matter of law, and not of construction;" that, as a matter of law, the property devised in trust for the widow should be charged with a pro rata share of such items. The determination of the question here presented hinges upon the intention of the testator as expressed in the will, as evidenced by its terms when considered as a whole if his intent can be determined therefrom. 44 Tex.Jur., pages 680, 689, 754, 755.

The determination of the intention of the testator as it relates to inheritance and federal estate taxes also hinges upon what was meant by the term "death duties" as used in paragraph No. 1 of the will. In Thompson v. Thompson, 236 S.W.2d 779, 789, the Supreme Court of Texas, in an opinion by Judge Griffin, said: "The term 'death duties' embraces all duties occasioned by death, and hence embraces probate and estate duties, and also legacy and succession duties."

In this connection, see Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969, 989; In re Heck's Estate, 120 Or. 80, 250 P. 735; In re Inman's Estate, 101 Or. 182, 199 P. 615, 16 A.L.R. 675; 28 Am.Jur., page 8.

Based upon the above authorities, we are of the opinion and hold that the term "death duties" covers all forms of taxes based upon death including estate taxes and inheritance taxes and that the use of such term in the will of Percy Jones should be

construed to cover all taxes payable out of his property by reason of his death.

In the original will of Percy Jones, his entire estate, all of his separate property and all of his one-half interest in the community property, was given, devised and bequeathed to the First National Bank in Dallas, Texas, in trust for certain purposes which were specifically set out. One of the first of the purposes enumerated was "to pay my funeral and other expenses, also debts and death duties." This language required said trust to pay such items, and unless the terms of the codicils show an intention of the testator to change such requirement, it must stand.

It may be noted that under the original will the bequests and devises to the wife, to-wit: the annual $10,000 payment from income from the trust therein created, and the home in Abilene, with furniture and improvements thereon, were made free of the expenses, debts and taxes in question. Codicil No. 5 provided that instead of leaving all of his property to his children, it was the desire of Percy Jones to change his will so that the trust for the children would receive only one-half thereof; that one-half of his separate property was withdrawn and taken from the trust set up primarily for the benefit of his daughters and placed in a separate trust for the benefit of his wife; that his wife should receive the income therefrom as long as she lived and in addition should have the right to appoint or dispose of such one-half of the separate property as she might see fit or proper. Such codicil further provided that this division of the separate property would eliminate the need for the annual $10,000 income payment to his wife. By the execution of Codicil No. 5 Percy Jones merely took some property out of the original trust and created a new trust. He did not change the first trust in any other manner except to relieve it of the burden of the $10,000 annual income payment. There was no provision in Codicil No. 5 or in any of the other codicils for a change of the burden of expenses, debts and taxes.

▮▮ Simply and tersely stated, the original will created a trust wholly for the benefit of the daughters of Percy Jones with the exception of certain specific bequests and devises to his wife and the further requirement that such trust should bear the burden of the expenses, debts and taxes therein described. The language of Codicil No. 5 plainly indicates an intention to make specific changes in the provisions of the original will and distinctly sets out the changes made. There was no expression however of an intention to change the requirement that the trust created in the original will should pay "funeral and other expenses, also debts and death duties." In the absence of any provision changing the original will in this respect the requirement must remain as therein provided. We are of the opinion that the provisions of Codicil No. 5 considered alone, or together, with the will as a whole, did not have the effect of changing the requirement of the original will that the burden of the expenses, debts and taxes in question should rest upon the first trust, created principally for the benefit of the daughters of Percy Jones.

▮▮ If we should be in error in holding that the language of the will and codicils considered alone clearly and unmistakably disclose the intention of Percy Jones that the burden of such expenses, debts and taxes were to be paid by the trust created for his daughters, then there was at least ambiguity and uncertainty as to the placing of the burden of paying such charges. Where there is ambiguity in the language of a will, courts will consider extrinsic evidence to determine the testator's intention. Russell v. Adams, Tex.Com.App., 299 S.W. 889; Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.W.2d 374; Ellet v. McCord, Tex.Civ.App., 41 S.W.2d 110; Hill v. Thrasher, Tex.Civ.App., 196 S.W.2d 461; Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145.

▮ The evidence discloses that Percy Jones carefully looked after his property and was very tax conscious. He subscribed to two tax services, one of which was the Federal Tax Service of Prentice-Hall. For thirteen years prior to his death, he employed Mr. W. W. Ford as a full time

office manager to keep his records and books and work out his tax returns.

On January 27, 1947, when Percy Jones executed his original will, the Revenue Act of 1942, 26 U.S.C.A.Int.Rev.Acts, page 167 et seq., was in effect. Under such act federal estate taxes were levied upon not only the separate property and community one-half of a testator dying in Texas but also on the wife's community one-half, as a part of the deceased's estate. The will of Percy Jones did not attempt to dispose of the one-half community interest of his wife. The executor and trustee of his will was, however, directed to pay "my funeral and other expenses, also debts and death duties." By requiring the executor and trustee to pay these charges, Percy Jones relieved and exonerated his wife's one-half community interest from the payment of any expenses, debts and death duties. As previously noted, the provisions of his original will also relieved the bequest and devise of the annual $10,000 income payment and the home in Abilene, together with improvements and furniture, from any of the burden of such expenses, debts and taxes.

On April 2, 1948, the Federal Revenue Act of 1948, 26 U.S.C.A.Int.Rev.Acts, became effective. This act repealed the provisions of the Revenue Act of 1942 which included the surviving spouse's estate as a part of the deceased's estate and made it liable for taxes. The Act of 1948 also provided that taxpayers and testators in community property states might devise one-half of their separate property to the surviving spouse, and relieve same from the payment of taxes, thereby, in effect, taking one-half of the separate property out of the estate of the deceased.

The testimony of Mr. W. W. Ford shows that on or about April 15, 1948, the office of Percy Jones received a bulletin from the federal tax service of Prentice-Hall which showed and discussed the changes made by the 1948 act, including the marital deductions permitted under the act. Mr. Ford prepared from the books and records of the office, figures showing the savings possible in the estate and inheritance taxes by taking the marital deductions permitted under that act. The computations made by Mr. Ford were figured on the basis of full marital deductions and did not charge the marital deductions with any taxes or other expenses of the estate. These figures demonstrated that by taking advantage of the marital deduction allowed under the 1948 act, a substantial saving would be made in estate and inheritance taxes. They were shown to Percy Jones by Mr. Ford and were discussed with him. Thereafter, on April 22, 1948, Percy Jones wrote Codicil No. 5, taking one-half of his separate property out of the original trust and created a new "separate trust" for the benefit of his wife, giving to his wife full power of appointment of this one-half of his separate property, as required by the Act of 1948 in order to take advantage of the marital deduction. If the language of the original will and codicils considered together leave any ambiguity and uncertainty as to whether the expenses, debts and taxes should be paid by the children's trust, we feel that the facts and circumstances in connection with the execution of the will by Percy Jones, and especially Codicil No. 5, as above mentioned, at least, raised an issue of fact which fully justified the trial court in finding that such was the intention of Percy Jones.

The judgment of the trial court is affirmed.