BLAIR, Commissioner. of Internal Revenue, v.
STEWART.*

No. 5745.

Circuit Court of Appeals, Fifth Circuit.

April 25, 1931.

See, also, Esperson v. Commissioner of Internal Revenue, 49 F.(2d) 259.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. Lewis Monarch, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau Internal Revenue, and Prew Savoy, Sp. Atty., Bureau Internal Revenue, both of Washington, D. C. (M. M. Mahany, Sp. Atty. Bureau Internal Revenue, of Washington, D. C., on the brief), for petitioner.

B. F. Louis, of Houston, Tex. (Murray G. Smyth, of Houston, Tex., on the brief), for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Niels Esperson and Mellie Esperson were husband and wife. During their married life, while citizens of Texas, they accumulated considerable property which under the laws of that state became community property. They had no children, and each made a will leaving to the other the entire property of which he or she should die possessed. In 1919 they sold 999 shares of oil stock to the Invincible Oil Corporation for $5,000,000. Niels Esperson died in 1922. His widow, now Mrs. Stewart, qualified as executrix. She testified that half of the just mentioned stock was given to her by her husband, but that after the sale he borrowed from time to time for investment various sums, which in the aggregate amounted to more than $1,000,-000; that she thought some of the investments he was making were hazardous, but that he did not think so; and that he promised that he would repay to her, but without

*Rehearing denied June 11, 1931.

interest, any loans she made to him. The following questions and answers were asked and given on her direct examination:

"Q. Did he state anything about what part of the estate this repayment would be made from? A. Mr. Esperson did not anticipate death.

"Q. That is not the question, Mrs. Stewart, I want to know whether Mr. Esperson agreed with you and stated anything to you as to what source the repayment of the funds loaned to him by you would come from. A. That they would come from the investments that he would make.

"Q. Was there anything stated by him as to whether it would come from his part of the community estate or as to whether they would come from the entire community estate? A. Yes, sir.

"Q. What was the agreement with reference to that as to where it would come from? A. That he would repay me the moneys loaned to him from his—from his—

"Q. (Interrupting.) From his part of the estate or from the entire estate? A. Well, from his part of the estate. As I say, Mr. Esperson did not anticipate death."

Upon this testimony of the executrix the Board found that "it was understood and agreed by and between Esperson and his wife that the money borrowed by him would be paid to her from his part of the community estate." The evidence does not disclose whether the borrowed money, or any part of it, was lost, or whether it formed in whole or in part a portion of the community estate as it existed at the time of Esperson's death.

The Board of Tax Appeals held that the aggregate amount of the loans should be deducted from Esperson's half of the community estate. It also held that Esperson's funeral expenses, including the cost of a monument over his grave, should be deducted from his part of the community estate. 11 B. T. A. 1283.

These rulings are brought here for review by the petitioner, the Commissioner of Internal Revenue.

■ Esperson had no property which he had owned before marriage, or which he had acquired during marriage by gift, devise, or descent. He therefore had no separate property, but only a half interest in the community estate. Revised Civil Statutes of Texas, arts. 4613, 4619. If we accept the Board's finding of fact that he agreed to repay out of his half of the community estate the loans which he received from his wife, the only rea-

sonable interpretation, as it seems to us, that can be placed upon his agreement is that he promised to secure his wife against any loss that might result on account of the loans out of his share of the community estate. The object of the agreement, even according to respondent's testimony, was to protect her separate property against loss. It was not contemplated by the agreement that her separate property should thereby be increased in value, even to the extent of interest on the loans. It would be an unreasonable and unfair interpretation of the agreement to hold, in the event there was not any loss, that Esperson bound himself to charge his share of the community estate with the aggregate amount of the loans; for in such event the result would be that his share of that estate would, without receiving any benefit, contribute half of the borrowed money to his wife's separate estate. If only part of the borrowed money had been lost, the contribution would be less, but it would be in the same proportion; and whatever amount he returned to the wife's separate estate would be in fulfillment of a promise to make a gift to her, and would be unenforceable and void because of a total lack of consideration. The burden was on the respondent to prove a loss by Esperson of the whole or some part of the borrowed money, and this burden she failed to meet. For all that appears there was no loss, and the borrowed money was represented in the amount which was left in the community estate at the time of Esperson's death. It follows that in our view the deduction which the Board made from Esperson's share of the community estate was erroneous. But we are further of the opinion that there should be no deduction from Esperson's estate, even though there had been satisfactory proof of the loss of some or all of the borrowed money.

■ Under the Texas decisions a husband and wife cannot convert community property into separate property, or vice versa, except by a contract which in law has the effect of an actual conveyance. Cox v. Miller, 54 Tex. 16; Green v. Ferguson, 62 Tex. 525; Kellett v. Trice, 95 Tex. 160, 66 S. W. 51; McKay's Community Property § 936. See also Justice v. McRuffin (Tex. Civ. App.) 224 S. W. 204. The conveyance whether absolute or as security ought to be proved by clear and convincing evidence where as here the proof of it depends, not upon the interpretation of a written instrument, but upon the oral testimony of the grantee, as to what was agreed to by the grantor whose lips have been sealed by death. In the absence of such evidence, the

policy of the law places in the community the property acquired during marriage otherwise than by gift, devise, or descent. The testimony of the respondent is too vague and uncertain to support the inference that Esperson conveyed to her, as security, any part of his share of the community estate. That testimony indicated at first that the loans were to be paid out of Esperson's investments; and respondent's final statement that payment was to be made out of her husband's part of the community estate was made in response to a leading question which suggested the answer that was given. And so it was not satisfactorily shown whether the loans were to be paid back out of investments or out of Esperson's part of the community property. Respondent would have been as well off without the alleged agreement, since she would have received all Esperson's property at his death both under his will, and, there being no children, under the laws of descent. R. C. S. art. 2578. The fact that such an agreement was unnecessary renders it highly improbable that it was made. Besides no definite or identifiable property then in existence was pledged, nor was property to be afterwards acquired definitely pledged, assuming that it could be; but the pledge of any property existing or to be acquired was made dependent upon the contingency that a loss might be sustained by Esperson in the making of future investments. The agreement which it is claimed Esperson made did not amount to a conveyance of any property, and was nothing more than a promise to make a conveyance if that should be found necessary in order to protect his wife's property against a possible future loss. The conclusion is that the alleged agreement did not amount to an actual conveyance.

■ We are of opinion that the Board was correct in holding that Esperson's funeral expenses were deductible from his half of the community property. Funeral expenses are deductible from an estate when they are "allowed by the laws of the jurisdiction." 26 USCA § 1095a (1). Such expenses are by the law of Texas recognized as claims against an estate and are given preference over all other claims. Article 3531, Revised Civil Statutes. The executor of an estate has no authority to administer any estate except that of the decedent, and therefore cannot administer on the behalf of the community property that belongs to the surviving spouse. An estate liable for funeral expenses at all is, of course, liable for the whole of such expenses. Gilroy v. Richards, 26 Tex. Civ. App. 355, 63 S. W. 664, and Goldberg v. Zellner (Tex. Com. App.) 235 S. W. 870, hold that community property rather than separate property is primarily bound for funeral expenses. In the first cited case it is not clear whether the court meant to hold that funeral expenses were chargeable against the entire community estate or only against the decedent's interest therein. But we think any doubt on that question was set at rest by the decision of the Supreme Court of Texas in Richardson v. McCloskey, 276 S. W. 680, where it was held that funeral expenses were chargeable against "the estate." The only estate there being administered was the interest of the decedent in community property; for in that case, as in this, the decedent had no separate property.

For the reason that in our opinion the Board erred in deducting from Esperson's share of the community estate the amounts claimed as loans made to him by respondent, the petition for review is granted, and the cause remanded for further proceedings not inconsistent with this opinion.