309 F.2d 592
 62-2 USTC P 12,105
 UNITED STATES of America, Appellant,
v.
Dorothy Anne STAPF and B. T. Ware, II, Executors and
Trustees of the Estate ofLowell H. Stapf,
Deceased, and Dorothy Anne Stapf,
Individually, Appellees.
Dorothy Anne STAPF and B. T. Ware, II, Executors and
Trustees of the Estate ofLowell H. Stapf,
Deceased, and Dorothy Anne Stapf,
Individually, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 18974.
 United States Court of Appeals Fifth Circuit.
 Sept. 26, 1962.
 
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D.C., H. Barefoot Sanders, U.S. Atty., Fort Worth, Tex., John A. Bailey, Atty., Dept. of Justice, Washington, D.C., for appellants.
 W. M. Sutton, Amarillo, Tex., for appellees.
 Before BROWN, WISDOM, and BELL, Circuit Judges.
 GRIFFIN B. BELL, Circuit Judge.
 
 
 1
 This is an estate tax case. The opinion ot the District Court is reported at 189 F.Supp. 830. Suit was filed by the executors of the estate of Lowell H. Stapf for a refund of estate taxes and interest paid pursuant to a deficiency asserted against the estate.
 
 
 2
 All facts have been stipulated. Mr. Stapf died testate on July 29, 1953, a Texas resident and domiciliary. His will was probated in Texas where his principal estate consisting of separate and community property, was situated. His will put his wife to an election[1] either to elect not to take under the will and thereby retain her one-half interest in the community estate, or to allow her one-half interest to be disposed of under his will in order that she might receive specified benefits thereunder.
 
 
 3
 The benefits included one-third of the residue, consisting of the whole of the community property, and separate property of a value of $65,100 owned by the decedent, less specific bequests. The benefits also included an automobile, itself community property in which the widow owned a one-half interest. The will provided that if she should elect to take under its provisions, all funeral expenses, costs of administration and claims against the estate, whether community or separate, should be paid out of the one-half interest of decedent in the community property. Community debts totalled $32,367.74, while expenses of administration, including attorneys' fees, were $4,073.47 and the community of the husband was sufficient to pay these.
 
 
 4
 Electing not to take under the will, the widow would have retained her one-half of the community property, subject to its pro-rata share of expenses of administration and one-half of the community debts, having a net value of $111,442.68. Taking, she became entitled to one-third of the gross value of decedent's separate estate ($21,666.66), the one-half interest of the husband, valued at $700 in the community automobile, and one-third of the combined community estate. This had a value of $106,268.18, or $5,174.50 less than the value of the interest Mrs. Stapf would have retained had she not elected to take under the will. Computed differently but with the same result, the widow, retained a one-third interest out of the one-half of the community owned by her, thereby transferring only a one-sixth interest under the election to take. Under this method of computation she transferred property having a valuation of $27,541.16 and received property being the one-third interest in the separate property of the husband and the one-half interest in the automobile of the aggregate value of the $22,366.66, making a net loss to her of $5,174.50. The government uses one method while the taxpayer uses the other. Either is sufficient for our purposes.
 
 
 5
 The taxpayer, having been notified of a deficiency after filing the estate tax return, paid the deficiency and claimed a refund. It being denied, suit was filed and this appeal is from the judgment of the District Court. The taxpayer appeals from the disallowance of the community debts and administration expenses as deductions from the gross estate of decedent under 812(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. 812(b). The government appeals from the allowance of an exclusion from the gross estate as a part of the marital deduction of the one-third of the separate property of decedent and the one-half interest in the community automobile passing to the widow under her election to take under the will, contending that this devise was incumbered or obligated within the meaning of 812(e)(1)(E)(ii) of the Internal Revenue Code of 1939, 26 U.S.C.A. 812(e)(1)(E)(ii), in an amount exceeding the value of the devise received by the widow in that the property transferred by her was of a greater value than that received by her.
 
 
 6
 As to the deductibility of the total of the debts and expenses from the community of decedent alone,[2] 812 of the Internal Revenue Code of 1939, as amended, being the applicable statute, provides in part:
 
 
 7
 '812. Net estate
 
 
 8
 'For the purpose of the tax the value of the net estate shall be determined, * * * by deducting from the value of the gross estate-- * * *
 
 
 9
 '(b) * * * such amounts--
 
 
 10
 '(1) for funeral expenses,[3]
 
 
 11
 '(2) for administration expenses,'(3) for claims against the estate, * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, * * *. The deduction herein allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement, be limited to the extent that they (are) contracted bona fide and for an adequate and full consideration in money or money's worth * * *.'
 
 
 12
 This section is the same as 303 of the Revenue Act of 1926 with respect to which it was said in First-Mechanics Nat. Bank of Trenton v. Commissioner of Internal Revenue, 3 Cir., 1940, 117 F.2d 127, 132 A.L.R. 1459:
 
 
 13
 'Unquestionably, a claim against a decedent's estate which is allowed by the laws of the jurisdiction under which the estate is administered is deductible in determining the net estate subject to federal tax. The Revenue Act applicable to the instant case specifically so provides.'
 
 
 14
 Cf. Blair v. Stewart, Footnote (3), supra; and Lang's Estate v. Commissioner of Internal Revenue, 9 Cir., 1938, 97 F.2d 867, on appeal from the Board of Tax Appeals, 34 B.T.A. 337. Thus, uniformity in the application of the statute was not expected by the Congress, and we look to the law of Texas to determine this issue.
 
 
 15
 The principle that Community debts are deductible in their entirety from the community interest of the decedent in determining estate tax liability where directed by the provisions of the will was recognized, although not applied, in Lang's Estate v. Commissioner, supra:
 
 
 16
 'On this issue we think the Board was correct in permitting a deduction of only one-half of these community obligations. Regardless of the incidents of the husband's personal liability for community debts during his lifetime, section 1342, Remington's Revised Statutes, supra, as construed by the Supreme Court of Washington, requires that community debts be satisfied pro rata from that portion of the community property distributable to the wife and that portion subject to the husband's testamentary disposition. It is only by provision of a deceased husband's will that a community debt may be charged solely against his share of the community. Redelsheimer v. Zepin, 105 Wash. 199, 202, 177 P. 736; In re Hart's Estate, 150 Wash. 482, 492, 273 P. 735.'
 
 
 17
 There was no provision in the will in that case the charge the whole of the claims against the community of the decedent, but the holding was that the claims in any event were not personal obligations of the decedent within the meaning of the Washington law as required by the regulation.
 
 
 18
 The Applicable Treasury Regulation, 105 (1939 Code), provides in pertinent part:
 
 
 19
 'Sec. 81.29 Deduction of administration expenses, claims, etc.-- In order to be deductible * * * the item must fall within one of the several classes of deduction * * * enumerated * * * and must also * * * be one of payment of which out of the estate is authorized by the laws of the jurisdiction under which the estate is being administered. Unless both of these conditions exist the item is not deductible. * * * If a claim against the estate, an unpaid mortgage, or an indebtedness is founded upon a promise or agreement, the deduction therefor is limited to the extent that the liability was contracted bona fide and for an adequate and full consideration in money or money's worth, * * *.'
 
 
 20
 'Sec. 81.32 Administration Expenses-- * * * Administration expenses include (1) executor's commissions; (2) attorney's fees; (3) miscellaneous expenses. * * *''Sec. 81.36 Claims against the estate.-- The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, * * *. Only claims enforceable against the decedent's estate may be deducted. If the claim is founded upon a promise or agreement, the deduction therefor is limited to the extent that the liability was contracted bona fide and for an adequate and full consideration in money or money's worth. * * *'
 
 
 21
 Measured by the criteria of the statute and the regulation, which adds the additional requirement that the claims be personal obligations, we hold that the debts and expenses here were deductible in full from the community interest of decedent, and reverse to that extent.
 
 
 22
 First, the Texas case law makes it abundantly clear that decedent by the terms of his will could so obligate his estate and his community property. Medlin v. Medlin, Tex.Civ.App., 1947, 203 S.W.2d 635; and Matthews v. Jones, Tex.Civ.App., 1952, 245 S.W.2d 974. It is true that neither of these cases involved taxes, but the regulation here requires only that the payment be authorized under the Texas law. Cf. In re Marinos' Estate, 1940, 39 Cal.App.2d 1, 102 P.2d 443.
 
 
 23
 Second, the government contends that only one-half of the debts represented personal obligations of the decedent and for that reason only one-half may be claimed as deductible. Cf. Lang's Estate, supra. This, too, is a question of state law. The general rule is that on dissolution of the community the husband, but not the wife is personally liable for community debts. 42 C.J.S. Husband and Wife 566b(1), p. 100. This is the law of Texas. A judgment could have been obtained against the estate of decedent for the full amount of the community debts. Of course, the community of the wife under Texas law is liable for payment of the community debts, and her husband could recover from it for advances made to pay community debts, but no personal judgment could be obtained against her for community debts. The surviving wife does not personally owe the community debts. Leatherwood v. Arnold, 1886,66 Tex. 414, 1 S.W. 173; Security Nat. Bank of Wichita Falls v. Allen, Tex.Civ.App., 1924, 261 S.W. 1057; Sargeant v. Sargeant, 1929, 118 Tex. 343, 15 S.W.2d 589; and Anderson v. Bundick, Tex.Civ.App., 1952, 245 S.W.2d 318. The debts were personal to decedent and to him only under the Texas law. The fact that the community property or even his property was sufficient to pay the debts does not take them out of the personal category.
 
 
 24
 Third, it is contended that there was no full and adequate consideration for more than one-half of the debts. The statute itself was amended in 1932 to make it clear that this requirement applies only where the debt is founded upon a promise or agreement,[4] and thus we do not reach the question of consideration for the debts here were in the main for income taxes and ad valorem taxes, debts imposed by law. The contention of the government would be well taken if the debts were founded on contract; otherwise a deduction could be claimed against the estate of decedent for a debt where one-half of the consideration received under the debt, such as the proceeds of a loan, went into the estate of the surviving wife. Here, however, no effort has been made to segregate the debts as between being founded on contract or imposed by law and none are pointed out as arising under contract.
 
 
 25
 The direction in the will of decedent, and the Texas law, coupled with the provisions of the Revenue Statute and Regulation, make it clear that the total of the debts and expenses of administration as specified in the findings of fact by the District Court were deductible from the gross estate of decedent. The District Court erred in not so holding. Cf. Estate of McGugan v. Commissioner of Internal Revenue, 1942, 47 B.T.A. 658 where the expenses of last illness and funeral expenses were allowed as a deduction from the gross estate of the wife, although these expenses were the primary liability of the husband under Florida law, where the wife provided by her will for payment out of her estate. See also Estate of Sarah H. Bradley v. Commissioner, Memorandum opinion, Docket No. 106452, 1943, CCH, 2 TCM 609 involving a Georgia estate to the same effect.
 
 
 26
 We affirm that part of the judgment holding that the devise to the widow of one-third of the separate property of decedent and the one-half interest in the community automobile qualified as a part of the marital deduction or exclusion from the estate of decedent.[5]
 
 
 27
 Certain basic facts must be borne in mind in considering this quesiton. There was no exchange of property between the testator and Mrs. Stapf, and she did give to the testamentary trust set up by decedent more than she received under the will. Only decedent's one-half interest in the community property is includible in his gross estate for federal tax purposes, Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir., 1938, 259 F.2d 231, and there is no contention that the property of the widow passing by the election under the will of decedent became a part of his gross estate for estate tax purposes. And, lastly, under the Texas law the devise of one-third of the whole community to the widow did not pass to her under the will but was satisfied out of her own one-half. Jones v. State, Tex.Comm.App., 1928, 5 S.W.2d 973; and Calvert, Comptroller v. Fort Worth National Bank, Tex., 1962, 356 S.W.2d 918, 919.
 
 
 28
 The statute here in question, par. (E)(ii) of 812(e)(1), supra, having to do with the valuation of marital deduction property passing from a decedent to his surviving spouse is as follows:
 
 
 29
 '(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection--* * *
 
 
 30
 '(ii) where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.'
 
 
 31
 The government relies on Treasury Regulation 105, (1939 Code), 81.47c(b), which extends the language of this statute to include an election as here, specifying by example that in computing the marital deduction the value of the bequest to a widow is to be reduced by the value of the community property interest relinquished by her. Neither this section of the Act or its legislative history envision such an example or result.[6] The regulation in this regard changes the plain terms of the statute by sweeping away the last clause thereof and must give way to the statute. Koshland v. Helvering, 1936, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268; Miller v. Commissioner of Internal Revenue, 5 Cir., 1956, 237 F.2d 830.
 
 
 32
 We also put aside the contention of the taxpayer that an encumbrance or obligation to be taken into account in valuing the property to be excluded means an encumbrance or obligation on the property such as a lien against the property for a debt, as distinguished from an obligation or encumbrance in the nature of a condition as here under the election. Wachovia Bank & Trust Co. v. United States, 1958, 163 F.Supp. 832, 143 Ct.Cl. 376.
 
 
 33
 We look to the terms of the statute itself for its meaning. The last clause of it teaches how the valuation is to be computed and this is the key to the determination of this issue. It shall be taken into account in the same manner as if the amount of a gift of such interest by the husband to his wife was being determined.
 
 
 34
 The value of a gift by a husband to a wife of property, on the condition that she surrender to, or give for the benefit of a third party a portion of her property, would not be reduced or 'netted' by the amount of property given up by the wife. There must be a monetary consideration or like benefit to the oiginal donor before the value of the property surrender is to be deducted from the value of the gift. Commissioner of Internal Revenue v. Wemyss, 1945, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958; Commissioner v. Bristol, 1 Cir., 1941, 121 F.2d 129; and Estate of Bartman, 1948, 10 T.C. 1073. All that Mrs. Stapf did by her election was to take the property devised to her and in turn surrender part of her property to the trust for the benefit of her children. Within gift tax confines the community property of the widow passing under the will of the husband to others may not be 'netted' against the devise to the widow, and thus testator, were the transfer inter vivos, would be liable for gift taxes on the full value of the devise.[7] Viewed in this light the devise of the one-half interest in the automobile and the one-third interest in the separate property of the testator qualify as a part of the marital deduction and the District Court did not err in so holding.
 
 
 35
 The gift and estate tax statutes complement each other. Here estate taxes are due now on the property of the husband with the devise to the widow excluded. It is a part of the marital deduction or exclusion on which taxes are deferred to the estate of the widow to be assessed on so much of it as survives on another day. The net of the transfer by the widow became subject to gift taxes at the time of the transfer. The property transferred by the widow will, to the extent of an amount equal to the devise to her, escape both gift and estate taxes. Nevertheless, and this applies alike to our holding on the deductibility of the debts and expenses of administration here, it is something permitted by the statute and proscription, if indicated, is for the Congress.[8]
 
 
 36
 Having reversed in part and affirmed in part we remand for such other and further proceedings as may be necessary and which are not inconsistent herewith.
 
 
 37
 WISDOM, Circuit Judge (dissenting).
 
 
 38
 I respectfully dissent.
 
 
 39
 With deference, I feel compelled to say that, in my opinion, the result reached by the majority is repugnant to fundamental principles of community property law. Nothing in Texas law requires the holding. Nothing in tax law requires it. And, the decision is inconsistent with the purpose of the equalization provisions of the Revenue Act of 1948 which put an end to the tax War-Between-the-States.
 
 I.
 
 40
 Testamentary Instructions to Pay Community Debts and Administration Expenses.
 
 A. The Will
 
 41
 This case stands alone. As far as I have been able to discover, no one, in Texas or in any other traditional community property state, ever before dreamt up the notion that by instructing his executors to pay the community debts from his share of the community a testator could:
 
 
 42
 (1) Double the federal estate tax deduction for his half of the debts of the community and
 
 
 43
 (2) Correspondingly increase his widow's share of the community which, as her share by vested right, is not includible in his taxable estate.
 
 
 44
 This notion is so contrary to one's ingrained understanding of the community as a partnership that I question whether Stapf's will did indeed intend the executors to take the extreme position they have taken. The will does not in terms require it.
 
 
 45
 The will does make plain the testator's intention that the debts and charges against the community should be payable from his share of the community or from his separate property. This is a testamentary provision common in a community property state. 'There is no doubt', as Judge Dooley, the district judge below, remarked, 'that a testator may lawfully exercise selectivity among different portions or different devises and bequests of his estate and order an impact of liabilities resulting in disproportionate burdens, or even a total burden on the one hand and exoneration on the other, and that is true in respect to payment of taxes, even the Federal Estate Tax.' 189 F.Supp. 830, 834. Unually, 'the intention of the testator (is) to give his wife her interest in the community estate free from all claims or debts so far as the other legatees (are) concerned.' Redelsheimer v. Zepin, 1919, 105 Wash. 199, 177 P. 736. See also In re Hart's Estate, 1929, 150 Wash. 482, 273 P. 735.[1] 'This would allow of the division or partition of the community property between the surviving spouse and the heirs of the deceased spouse before debiting against such property the community property debts, so that the share going to the surviving spouse would go free of any liability for the community debt.' 1 De,Funiak, Principles of Community Property Law, 211 (1943). The Texas cases cited in the majority opinion are to the same effect. Medlin v. Medlin, Tex.Civ.App., 1947, 203 S.W.2d 635; Matthews v. Jones, Tex.Civ.App., 1952, 245 S.W.2d 974. In such cases, the dispute is only over the construction of the will. There is no holding and no intimation in these decisions that the purpose or effect of a will such as Stapf's is to enable executors to take a tax deduction for paying the debts chargeable by law to the wife's share of the community.
 
 
 46
 A simple, reasonable construction of the will is that Stapf's purpose was to make the inducements so attractive Mrs. Stapf would feel duty bound to take under the will. Should she resist the will, her share of the expenses and debts would be payable from her half of the community. The legal effect of the pertinent testamentary language is to make a conditional gift or legacy to the widow in an amount equal to half of the charges against the community. The bequest is at the expense of the other distributees and effects a redistribution of the decedent's estate. But it is no different from instructions to the executors to pay the mortgage on a son's house, or to pay the debts of a third person. It is a straight pencuniary legacy.
 
 B. Texas Law
 
 47
 The basic error of the majority lies in their not recognizing that in the settlement of the community, following its dissolution, the community is regarded as a third person, vis-a-vis husband and wife. It is not a civil person in the common law sense, but time and again courts have referred to it as a separate entity. 'The laws of Washington establish a community between spouses which is a separate entity, 'just as a corporation or an association."[2] More often, the community is described as a partnership. 'The law recognizes a partnership between the husband and the wife * * * (who) are entitled to an equal share in the community. * * * At the same time both are liable in equal proportion, for the losses and debts incurred during its existence'. Schmidt, Civil Law of Spain and Mexico, T. 1 c. IV, Sec. 1, art. 43, 49, p. 12 (1851). In a very early case the California Court said:
 
 
 48
 'Our whole system, by which the rights of property between the husband and wife are regulated and determined is borrowed from the civil law and Spanish law. * * * The relation of husband and wife is regarded by the civil law as a species of partnership, the property of which, like that of any other partnership is primarily liable for the payment of its debts.' Packard v. Arellanes, 1861, 17 Cal. 525, 531, 537.
 
 
 49
 In Texas the community is sometimes referred to as a 'trust,' but 'there is nothing in such a 'theory' that conflicts with the view of a marital partnership, a term frequently used by the Texas Courts, since it is merely designed to make clear that fiduciary obligations are imposed upon the one holding the legal title, the same fiduciary obligations which are imposed on any partner who has control and management of partenrship assets.' 1 DeFuniak, Principles of Community Property 95 (1943). In an authoritative discussion of Texas community property law,[3] Judge Hannah described the community:
 
 
 50
 'The relationship of the spouses in Texas during their life time is substantially that of partners in a commercial partnership, and the husband and wife are in all respects equal partners, the husband being the managing partner and vested with management powers.'
 
 
 51
 As DeFuniak comments, 'It is difficult to see how it can be observed in any other light, for it represents the right to share equally in acquests and gains of the spouses during the marriage as well as liability for the obligations incurred on behalf of the community, usual attributes of partnership.' 1 DeFuniak, Principles of Communityn Property, 95. of Community Property, 95. is regarded as a partnership separate from the partners, Texas law provides that the community property of husband and wife 'shall be liable for their debts contracted during marriage.' Art. 4620, Vernon's Ann.Tex.Civ.Stat. And, Section 156 of the Texas Probate Code, V.A.T.S., provides:
 
 
 52
 'Community property, except such as is exempt from forced sale, sahll be charged with all valid and enforceable debts existing at the time of the dissolution of marriage by death.'No individual has the testamentary power to change this law of Texas. In every case the community passes with the debts of the community charged against it. Tex.Prob.Code 45, 156.
 
 
 53
 Death dissolves the community. Then, as in the dissolution of a partnership, there is an equitable accounting between the separate estates of huband and wife and the community. See 30 Tex.Jur.2d, Husband and Wife, 134 and cases there cited. The personal liability of the husband provides no basis for shifting to him all of the community debts, even if he had paid the debts from his separate funds. 'It is a well established rule of law that the separate estate of one spouse must be reimbursed by the community estate for advances from such separate estate.' Snodgrass v. Robertson, Tex.Civ.App., 167 S.W.2d 534, err. ref. W.O.M. Even when a husband is sused and held liabel on when a husband is sued and held liable on community is not relieved of liability. 'It is well settled in (Tezas) that even is well settled in (Texas) that even to an action by or against the husband concerning the community property, she is still bound by a judgment rendered against the husband in the action. This rule is based on the doctrine of virtual representation under which the husband is by law, designated the representative of the wife's interests in the community.' 30 Tex.Jur.2d., Husband and Wife, 167.
 
 
 54
 The husband's personal liability, on which the majority relies as the principal basis for their decision, does not reduce the community's liability. It does not affect the liability of the widow's share for half the debts. It does not increase the amount (one-half) of the claims against the husband's estate when the community is sufficient to satisfy the claims. Thus:
 
 
 55
 'Under our law the community property is the primary fund for the payment of community debts, and we think that, where there exists sufficient community property to pay the community debts, no resort can be had to the separate property of the deceased husband for the purpose of paying such debts, though such property is, of course, liable if the community property should prove to be insufficient.' Clark v. First Nat. Bank, Com.App.Tex., 1919, 210 S.W. 677, 679.
 
 
 56
 In short, the personal liability of a husband is that of a surety. If a husband pays community debts out of his separate estate, the community reimburses the separate estate on dissolution of the community. The wife is a special partner in a limited partnership since her liability is limited to her share of the partnership assets. The general partner's (the husband's) liability is unlimited because it is he who has the control and administration of the partnership. But the husband's unlimited liability for community debts and the wife's limited liability for such debts are no more determinative of their respective rights and liabilities as owners of the community, than are the corresponding liabilities of a general partner and the special partner in a commercial partnership in the common law in determining their respective property rights and liabilities. The fact that only the husband may be sued does not relieve the wife's share of any liability; it is really the community that is sued and must pay the claim to the extent of the community estate.
 
 
 57
 This brings us to the question of the effect of Stapf's will under Texas law. Texas law is clear beyond a doubt: if there had been no will, since the community was able to pay its debts only half of the debts would be allowed against Stapf's estate. Should the will make a difference? No. The wife's share was charged with half the debts before Stapf's death. His death dissolved the community, making it impossible for Stapf to change the status of claims fixed prior to his death. The only change the will could make would be by providing a method for payment of debts. But a testamentary direction to executors to make a payment from the decedent's estate, to the benefit of another, is simply a legacy.
 
 
 58
 If the reasoning of the majority were sound, logically Stapf's will should not affect the majority's conclusion. Their decision rests on the husband's personal liability for the community's obligations. But that liability exists without a will. It is completely independent of a will. Whether or not a husband is personally liable, when the community is dissolved Texas law divides the liabilities as it divides the assets.
 
 C. Tax Law
 
 59
 1. The 'Claim' contemplated. Section 812(b)(3), Internal Revenue Code of 1939, permits the deduction of such 'claims against the estate * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered.' The state law does not apply of its own force. The federal tax law, for its own purposes, incorporates state law by reference. See Hart and Wechsler, The Federal Courts and the Federal System, p. 456; cf. Towner v. Commissioner, 182 F.2d 903, 907 (2d Cir., 1950). The role played by state law in the taxing statute is explained by the Supreme Court in Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed. 585, 626, (1940):
 
 
 60
 'State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law.'
 
 
 61
 A similar principle should be applied in allowing or disallowing a claim under 812(b)(3). The question to ask is whether a claim is the type of claim against the estate contemplated by the taxing statute.
 
 
 62
 The type of claim allowable as a deduction in determining the amount of a decedent's estate cannot be a claim based solely on the husband's personal liability for community debts. That is only a potential liability to creditors which is washed out in this case since the community property was sufficient to satisfy the debts of the community; claims against a solvent community after dissolution of the partnership are not against the decedent personally but are attributable to the marital estate. In the accounting between the separate estates of husband and wife and the community, the husband's liability would be for only half the claims. 'Regardless of the incidents of the husband's personal liability for community debts during his life time * * * community debts (are) satisfied pro rata from that portion of the community property distributable to the wife, and that portion subject to the husband's testamentary disposition.' Lang's Estate v. Commissioner, 9 Cir., 1938, 97 F.2d 867. This puts the tax where it naturally falls, on half of the net community-- the only part over which Lowell Stapf had testamentary control.
 
 
 63
 The salient feature of a true 'claim' is its involuntary nature. The debtor owes the claimant money and the claimant has a right to payment irrespective of the debtor's wishes. In this case the claim is provable against the testator's estate only because of the decedent's voluntary and gratuitous testamentary assumption of the claim. In United States v. Mitchell, 7 Cir., 1934, 74 F.2d 571, the Seventh Circuit, in discussing whether an obligation, voidable under the Statute of Frauds, could be deducted if the executors had waived the defense and paid the claim, stated: 'Nor can an asserted obligation which was enforceable only at the option of the deceased obligor be deducted.'
 
 
 64
 2. Authorities. Neither First-Mechanics Nat. Bank of Trenton v. Commissioner, 3 Cir., 1940, 117 F.2d 127, nor Lang's Estate v. Commissioner, 9 Cir., 1938, 97 F.2d 867, relied on by the majority, supports the Court's holding. Each, especially Lang's Estate, points the other way. In First-Mechanies the court refused to allow as a deduction debts voluntarily paid by the estate and approved by the state orphan's court. It concluded that since the estate was not obligated to pay the claim, the claim was not deductible. In Lang's Estate, as in this case, the taxpayers argued that under the law of the State of Washington, since 'a husband is personally liable for community debts, as fully as is the community', the 'entire amount of these community debts should be deducted from the gross estate.' The court repudiated this contention:
 
 
 65
 'Regardless of the incidents of the husband's personal liability for community debts during his lifetime, section 1342, Remington's Revised Statutes, supra, as construed by the Supreme Court of Washington, requires that community debts be satisfied pro rata from that portion of the community property distributable to the wife and that portion subject to the husband's testamentary disposition. It is only by provision of a deceased husband's will that a community debt may be charged solely against his share of the community. Redelsheimer v. Zepin, 105 Wash. 199, 202, 177 P. 736; In re Hart's Estate, 150 Wash. 482, 492, 273 P. 735. If there be sufficient community property in the estate to discharge the obligations here in issue, then no more than one-half can be termed personal obligations of the decedent.' Lang's Estate v. Commissioner, 9 Cir., 1938, 97 F.2d 867, 871, 872.
 
 
 66
 In the next to last sentence of the quotation, on which the majority rely heavily, all that the court was saying was that Lang's will had not provided for payment of community debts out of his share; as a matter of property law, the claims were not provable against Lang's estate. The Ninth Circuit's citation of Redelsheimer v. Zepin and In re Hart's Estate makes this plain. Neither of these cases had anything to do with taxes; they turned on whether the testator intended burdening his share of the community with payment of all of the debts. Thus, Redelsheimer v. Zepin, holds that the testator intended 'to give his wife her interest in the community estate free from all claims or debts so far as the other legatees * * * are concerned.' In Hart's Estate the court held that the testator intended 'all the debts should be first paid from (the) decedent's property, thus passing to (the) appellant her community interest in the estate free and clear of all of the community indebtedness.' Of course, in the absence of a claim provable against the estate, as a matter of property law, the question facing this Court did not arise.
 
 
 67
 All of the tax authorities agree that where, 'under local law, a claim is both an obligation of the community as well as a personal liability of the deceased husband, and it must be satisfied pro rata out of both shares to the extent that there are sufficient funds, no more than one-half is a 'personal obligation' of the decedent and hence only one-half is deductible.' Mertens' Law of Federal Gift and Estate Taxation, 26.20. See also Jackson, Community Property and Federal Taxes, 12 S.W.L.Jour. 43 (1958); Childress, Community Property in Administration of Estates in Texas, Tex. Inst., 5th Ann.Tax.Conf. (1957), 155, 167; Warren and Surrey, Federal Estate and Gift Taxation (1961), p. 710; Lowndes and Kramer, Federal Estate and Gift Taxes (1962), 15.18, p. 347.
 
 
 68
 The executors find support for their position in two tax court cases dealing with funeral expenses: Estate of McGugan, 47 B.T.A. 658 (1942) and Estate of Bradley, 12 P-H Tax Ct.Mem. 1195, CCH 2 TCM 609 (1943). These were Florida and Georgia cases; they did not involve community property. Besides, Stapf's funeral expenses are not at issue here; they were allowed as a full deduction. There is little or no analysis of the rationale for allowing the deduction in either case, other than the statement in Estate of Bradley that since the sums were actually expended by the executors and approved by the state court having jurisdiction, they were deductible. Such a statement is clearly incorrect. In Fidelity-Philadelphia Trust Co. v. United States, 3 Cir., 1955, 222 F.2d 379, the Third Circuit held that executor's commissions were properly deductible only up to three per cent of the gross estate, even though the state orphans' court had allowed four per cent. 'The fact that a claim was presented and allowed in the Probate Court and subsequently paid by the executors has no bearing on the deductibility of the claim in question (incomputing the net taxable estate).' United States v. Mitchell, 7 Cir., 1934, 74 F.2d 571, 573; see Estate of Schoenfeld, 37 B.T.A. 36, 40 (1938).
 
 
 69
 The principles applicable to allowance of funeral expenses are completely inapplicable to allowance of debts or claims against the community. A claim for funeral expenses comes into existence after dissolution of the community. In Blair v. Stewart, 5 Cir., 1931, 49 F.2d 257; cert. den. 1931, 284 U.S. 658, 52 S.Ct. 35, 76 L.Ed. 558, this Court, construing Texas law, held that funeral expenses chargeable against 'the estate' were chargeable against the only estate being administered, 'the interest of the decedent in community property.' Since that case, 'It has been the uniform practice of examining revenue agents in Texas to allow all of the decedent's funeral expenses * * * as a deduction against the decedent's half of the community.'[4] However, both courts and legislatures have stretched community property law in dealing with funeral expenses. Texas courts take the view that 'a decent regard for the memory of the dead' warrants holding the community liable for funeral charges, and have expressly disapproved of Blair v. Stewart. Norwood v. Farmers & Merchants National Bank of Abilene, Tex.Civ.App., 145 S.W.2d 1100, 1103, err. ref'd; see also Goldberg v. Zellner, Tex.Com.App., 235 S.W. 870; Richardson v. McCloskey, Tex.Civ.App., 261 S.W. 801; Tex.Com.App., 276 S.W. 680; Hocker v. Piper, Tex.Civ.App., 2 S.W.2d 997; Goggans v. Simmons, Tex.Civ.App., 1958, 319 S.W.2d 442.
 
 
 70
 3. Tax Effects. The subject of the federal estate tax is the transfer of ecomomic interests. A decedent's assumption of the debts of another cannot change the total of the economic interests transferred. It can only divert part of the total by a legacy equal to te debts assumed.
 
 
 71
 Under the majority's holding, the rich and shrewd in a community property state can put the estate tax out of business. For example, in the twilight of their years, a couple with community property worth $1,000,000 could borrow an additional $1,000,000 and invest it in securities, using the $2,000,000 as collateral. As a result, the community property would be increased from one million to two million dollars, and would have debts against it of one million dollars. If the husband provided by will that all community debts be paid out of his share of the community property, upon his death his share of the community property would be worth $1,000,000. All of this, however, would be matched by deductible community debts. Thus, under the Court's holding, the entire 'net' estate of $1,000,000 would pass, untaxed, to the wife.
 
 
 72
 If the majority decision is not corrected, the will of every informed taxpayer in all the community property states is certain to follow Stapf's will. Such taxpayers will enjoy a substantial advantage over taxpayers in common law states. With the same amount of property as that of a married couple in a common law state, a Texas widow's share of the community will be larger than the marital deduction, to the extent of one-half of the debts. Judge Dooley pointed this out clearly, 189 F.Supp. 830, 834:
 
 
 73
 'To say that a will with such provisions is effective under the law of Texas is not at all the same thing as saying that under the laws of the State of Texas, dealing with the allowance of claims in the course of probate and administration or in levying the state inheritance tax, the law puts the power in the hands of a testator at will to alter the amount of deductible debt obligations up or down, depending on whether the testator chooses to assume separately all of the community debts or prefers to let the survior of the marital community bear one-half of such liability. The Federal Estate Tax Law was revised and altered materially in 1948 with the purpose of achieving approximate equality among taxpayers in community and non-community states. It is not readily apparent how a testator in a non-community state could very well deplicate the advantage sought in behalf of the present estate.'
 
 D. Costs of Administration
 
 74
 The majority opinion does not differentiate between funeral expenses, administration expenses, and debts. Each of these, however, is a distinct category controlled by its own rationale in the determination whether it is chargeable to the decedent's estate or to the community. They cannot be lumped together. The official Interpretative Commentary to Section 322 of the Texas Probate Code, for example, states that funeral expenses, expenses of administration, and expenses incurred in the preservation, safekeeping, and management of the estate 'are not debts of the decedent'. As pointed out in this opinion, notwithstanding Blair v. Stewart, supra, Texas courts treat funeral expenses as charges against the community.
 
 
 75
 It the husband should die first, half of the costs of administration are charged against his estate, because the entire community is included within the administration.[5] Schumacher, 8 T.C. 453 (1947). If the wife should die first, all of the expenses of administration are deductible because only her half of the community is administered in her estate. Blackburn's Estate v. Commissioner, 5 Cir., 1950, 180 F.2d 952.
 
 
 76
 The district judge, as I see it, properly allocated 70 per cent of the expenses of the administration to the community, that is, 35 per cent to the widow's share and the 35 per cent plus the remainder of 30 percent to the decedent.[6] This seems a fair allocation. As noted by Judge Dooley, the executors spent a great amount of their time in connection with the administration of the community. There is no good reason for giving Mrs. Stapf a free ride.
 
 E. Conclusion
 
 77
 Strong economic, social, and moral reasons support the view that marriage is a full partnership between equal partners. Judge Dooley speaks for all of the traditional community states when he says, there is a 'deep-rooted tradition * * * that liabilities against the whole community estate should be borne half and half, in the true spirit of the marital partnership.' 189 F.Supp. 830, 835.
 
 
 78
 It is not easy to fit community property concepts smoothly into a tax system essentially derived from principles extracted from some sort of a 'brooding omnipresence in the sky.' As a consequence, for many years the integrity of the community property system as an institution was under almost continuous attack from taxpayers understandably resentful that citizens in common law states should pay higher federal taxes than citizens in other states. The attack reached its peak in the Revenue Act of 1942. This statute, ignoring the wife's vested ownership in community property and community earnings, treated her half as owned by the husband. The Act required the inclusion of the whole community in the taxable estate of the first spouse to die. The statute may have been motivated by ideals of tax equality and uniformity, it may have been grounded on sound tax arithmetic, but it struck a severe blow against what many persons regard as an enlightened concept of the marital relationship and the status of married women. Finally, in the tax equalization provisions of the Revenue Act of 1948, after years of negotiation, a delicate but balanced reconciliation of interests was achieved by putting taxpayers in the common law states on the same paying basis as taxpayers in community property states 'without tinkering with the property law of the states.'[7] There are some who condemn the 1948 Act as not consistent with federal emphasis on control as the chief criterion in taxing, and as having generated new inequalities.[8] But the Act has saving graces. It works. The tax inequalities it created are relatively minor. In common law states the Act's reliance on check-book equality prevents any pressure from being exerted to introduce an alien legal institution. And, in community property states federal tax laws now no longer run counter to laws and customs long rooted in the civil law concept of the marital relationship as a partnership between husband and wife.[9]
 
 
 79
 This decision imperils the tax reconciliation between the States. The irony of it is that in the name of Texas and taxes, the holding egregiously offends Texas law and tax law.
 
 II.
 
 80
 The Marital Deduction.
 
 
 81
 The election device, borrowed from the common law and an anomaly in a community property system, enables a testator to exchange a marital bequest for the power to dispose of his widow's share of the community over which, by law, he has no testamentary control.[10] The usual transaction is three-cornered, since the widow's property passes not to or through the estate but to a trust. Here, as a result of his widow's election, Lowell Stapf increased the amount of the property he controlled in his will.
 
 
 82
 The purpose of the marital deduction is to give to taxpayers in common law states the same tax benefits from a marital bequest that a surviving spouse has from her share of the community. To round it out, taxpayers in community property states are allowed a marital deduction up to one-half of the amount of the separate property.[11] The Act has two built-in requirements integral to a bequest qualifying as a marital deduction: (1) There must be no strings. The surviving spouse to whom the bequest is made must be given rights substantially equivalent to the absolute rights a surviving spouse has in her share of the community. This is the price the husband pays to obtain the marital deduction. (2) The property bequeathed must be includible in the widow's taxable estate or must be subject to a gift tax on its disposition by gift, that is, taxed again in the same generation. This is the price the widow pays to obtain the marital deduction. These requirements tend to offset a large loss of tax revenue, taking into consideration the frequency with which persons of means would otherwise avoid taxation of a widow's estate by means of a testamentary trust with the income for life to the widow and the remainder to others. The marital deduction was sold to Congress and bought by Congress on these representations. The policy and rationale of the Act override the language. This is, therefore, no case for evisceration of meaning by the dull edged knife of literalism.
 
 
 83
 Here, it is just not a fact that Mrs. Stapf had the same rights to the bequest that she had over the community property. A survivor's ownership of a half interest in community property is absolute, unburdened, vested from the moment of the community's acquisition of the property. On the other hand, here the marital bequest was conditional and burdened with the obligation of the widow's giving up more than she received. The testator failed to pay the price he is required to pay for a marital deduction; the string he attached enabled him to control equivalent property, so that for all practical purposes, the property was part of his disposable extate.
 
 
 84
 The surviving spouse also failed to pay the price tag Congress put on a marital deduction: The bequest did not increase her taxable estate by the amount of the property bequeathed. On the contrary, her taxable estate was reduced, since the value of her interest in the community, which she relinquished, exceeded the value of the bequest. She received no economic benefit from the bequest-- except the tax savings. Moreover, she owed no gift tax, because she surrendered more than she received.
 
 
 85
 After the dust settled, the economic result of this transaction was a gift by the testator of $106,268.18 to the trust, and a gift by the wife of $5,174.50 to the trust. There was, therefore, no gift to the spouse. This is fatal to the executors' contention. The marital deduction is concerned only with a gift to a spouse. The Act is concerned with the economics of the transaction, as is evident from the fact that in determining the value of a bequest, 'where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent * * * such incumbrance or obligation shall be taken into account'. When the dollar-effect is a minus $5,000 result for the widow, it is unreal and obfuscatory to speak of the bequest as a gift ot the spouse entitling the testator to a marital deduction.
 
 
 86
 The proper analytical approach, as I see it, is to recognize that we have a single three-cornered transaction involving the husband (H), the widow (W), and the trust (T).[12] The bequest and the election cannot be separated and treated independently; the testator himself made that impossible. An example will clarify the approach, taking round numbers and changing the amounts so that they will be easy to follow. H dies, leaving $200,000 of separate property. The community amounts to $200,000. H's estate is $300,000; W's share of the community is $100,000. The will makes a bequest to W of $100,000 but puts her to an election requiring W to transfer her share of the community to T. W elects to take under the will, so her community interest of $100,000 goes to T. These are the economics: H has the same amount of property to dispose of as if he had made no bequest, $300,000, because of W's surrender of her property to H's testamentary control; W has time same amount of property, because the bequest of $100,000 is offset by the surrender of $100,000; T has $100,000 he did not have before. This is not my idea of the sort of a gift to a spouse that Congress had in mind when it enacted the marital deduction law.
 
 
 87
 Consider the tax effects, according to the majority holding. H would be entitled to a marital deduction of $100,000, bringing his estate down to $200,000. W owes no gift tax on the transfer to T, because the amount she transferred to T did not exceed the amount received. On W's death, there would be $100,000 only in her estate, if it were not consumed. Result, according to the majority: $100,000 escapes both estate and gift taxes. In 1948 the whisper of a rumor that the marital deduction might produce such a result would have torpedoes the Act.
 
 
 88
 In a common law state, the same result would be achieved only if the widow had property of her own. The scheme would have primary importance in a community property state because of the wife's ownership of half the community by operation of law. The majority's holding, therefore, tends to defeat the Act's purpose of placing all taxpayers on a par.
 
 
 89
 The result the majority reach is not dictated by the statute. Section 812(e) (1)(E) provides:
 
 
 90
 '(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection--* * *
 
 
 91
 '(ii) where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.'
 
 
 92
 If we gave the italicized words a common sense meaning, we must take them to exclude the necessity that the obligation be a pecuniary obligation, such as a mortgage, attached directly to the property. 'Any' incumbrance or obligation is broad enough to encompass the absolute obligation the decedent imposed here. See Ray, The Widow's Election, 15 S.W.L.J. 85, 141 (1961).
 
 
 93
 The Court subordinates the meaning of the section as a whole to a literal interpretation of 'gift' in the final clause: the obligation shall be 'taken into account in the same manner as if the amount of a gift to such spouse were being determined'. But, as in any 'as if' situation, the very use of those two little words is implicit recognition that the thing treated 'as if' it were the same is not the same. Some allowance, therefore, must be made for the lack of sameness where, for example, it would be inconsistent with the purposes of the legislation to treat the bequest here exactly as a gift. A bequest cannot be treated for all purposes as a gift; it is a testamentary disposition and the estate tax is involved.
 
 
 94
 The majority start with the premise that a marital bequest must be given the identical tax treatment as a gift. They point then to the unquestioned fact that in determining the taxability of a gift, a condition that the donee transfer a portion of her property to a third person does not reduce the value of the gift. The consideration must benefit the donor to relieve a transfer by him from being a gift. Commissioner v. Wemyss, 1945, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958. Since Mrs. Stapf's transfer went to the trust, not to her deceased husband, the majority hold that the value of the bequest was undiminished by the widow's election.
 
 
 95
 As pointed out, a view so literal defeats the purposes and rationale of the Act. On the other hand, if we bear in mind that in fact the bequest is a testamentary disposition, not an inter vivos transfer,-- the donor is deceased-- it is constructive and in keeping with the intent of the Act to regard the bequest as a gift. We may accept the principle that in determining the value of a gift, benefits flowing to the donor, not detriment to the donee, is decisive. Here, then, to the extent possible and in the only way benefits may flow to a testator, Stapf received full consideration for his marital bequest by Mrs. Stapf placing her property within his testamentary control.
 
 
 96
 Wemyss is no obstacle to this approach. In that case the husband made an ante-nuptial transfer to his wife to compensate her for the loss of income from a trust established by her first husband; on her remarriage the income was to go to her child. This was held to be a taxable gift. But the donor in Wemyss, unlike the donor here, received no offsetting consideration or benefits from the immediate donee. If we look at the economic effect of the tripartite transaction in Wemyss, the husband made a gift to his wife's child, the inocme beneficiary of the trust. Wemyss, therefore, supports the argument I make here. In Wemyss, as in this case, because of the triangular neture of the transaction, the transferor made a taxable transfer that, in effect, was a gift to a third person, not to the spouse.
 
 
 97
 This brings us back to the dominant statutory intention to provide a tax deduction for a non-community property taxpayer making a gift to his surviving spouse equitable with the widow's half of the community. To the extent it is a gift to the spouse, after taking into account all obligations imposed by the decedent, it qualifies for the marital deduction. If, instead, the testator uses his widow as an interposed party to make a gift to a third person the transfer to the spouse cannot be regarded as a gift to her. Thus, Lowndes and Kramer take note of the district court's holding in the case before us but nonetheless sar:
 
 
 98
 'What the Regulations are driving at seems to be this. If a decedent bequeaths property to his wife in lieu of her interest in community property, which is not part of his estate and which does not pass to her from him, it seems clear that the only thing which the surviving spouse actually receives from the decedent is the excess of the interest bequeathed to her over and above the value of her interest in the community property. Therefore, this should be the only amount which qualifies for the marital deduction'. Lowndes and Kramer, Federal Estate and Gift Taxes, 17.5 (1962).
 
 
 99
 The statute does not refer to the effect of a widow's election. Moreover, the terms 'incumbrance', 'obligation', and 'takne into account' are imprecise. See 4 Mertens, Federal Gift and Estate Taxation 29.53 (1959). It is especially appropriate, therefore, for Treasury to issue Regulations and for courts to give weight to the administrative interpretation of these terms.
 
 
 100
 Example (1) of Section 81.47c(b) of Treasury Regulations 105 is no different from the instant case.
 
 
 101
 '(1) A decedent devised a residence valued at $25,000 to his wife, with a direction that she pay $5,000 to her sister. For the purpose of the martial deduction, the value of the property interest passing to the wife is only $20,000.'
 
 
 102
 Example (3) of the Regulation provides for just such a contingency as has arisen here:
 
 
 103
 '(3) A decedent bequeathed certain securities to his wife in lieu of her interest in property held by them as community property under the law of the State of their residence. The wife elected to relinquish her community property interest and to take the bequest. For the purpose of the marital deduction, the value of the bequest is to be reduced by the value of the community property interest relinquished by the wife.'
 
 
 104
 The Supreme Court has 'many times declared that Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons.' Commissioner v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831, 836. I do not see any basis whatsoever on which the regulation governing marital deductions could be called 'unreasonable and plainly inconsistent with the revenue statutes'.
 
 
 105
 I would hold that when a testator burdens a marital bequest with the condition that his widow surrender her property to his testimentary control the condition is an 'incumbrance' or 'obligation' within the meaning of the Act. To the testator who is given power over property not otherwise within his testamentary control and to the spouse, the realities of the situation command recognition of the fact that the value of the bequest is the value of the property bequeathed over the value of the property surrendered by the surviving spouse. If the surviving spouse is worse off, this Greek-bearing-gifts bequest cannot qualify as a marital deduction, the justification for which is a no-strings spousal gift equivalent to the absolute ownership a surviving spouse has in the community.
 
 
 106
 I would affirm the district court on the first point and reverse the district court on the second point.
 
 
 
 [1]
 The doctrine of election under the Texas law is well established. See Dakan v. Dakan, 1935, 125 Tex. 305, 83 S.W.2d 620; Smith v. Butler, 1892, 85 Tex. 126, 19 S.W. 1083; and 44 Tex.Jur., Wills, 285 et seq
 
 
 [2]
 The debts of decedent totalled $32,367.74, all of which were community debts, including $23,701.34 due for 1951 income taxes, and interest thereon in the amount of $1,955.33. The expenses of administration totalled $4,073.47. The Commissioner determined that 65 percent of the expenses of administration should be allocated to and deducted from the gross estate of decedent, and the remaining 35 percent allocated to the widow's one-half of the community estate. This allocation was affirmed by the District Court and the allocation is conceded to be correct if the expenses are not deductible. Ad falorem taxes due amounted to $1,954.96
 
 
 [3]
 Allowed in toto here. Blair v. Stewart, 5 Cir., 1931, 49 F.2d 257
 
 
 [4]
 Senate Report No. 665, 72nd Congress, 1st Sess., p. 51 explains the amendment (805 of the 1932 Act) as limiting the requirement for consideration to liabilities founded on contract, as distinguished from liabilities imposed by law or arising out of torts
 
 
 [5]
 The Commissioner allowed the one-half community interest of the husband in the automobile as a part of the marital deduction. No issue was raised to such allowance by the government in the trial court where the allowance was affirmed. Now it is asserted that the Commissioner was in error in the allowance which was based on his belief that Mrs. Stapf would have received the automobile whether she elected to take under the will or not. While this belief of the Commissioner was incorrect because the devise of the automobile was also based on the election, under our decision we do not reach this question
 
 
 [6]
 Senate Supp.Report No. 1013, Part 2, 80th Cong., 2nd Sess.; House Report No. 1274, 80th Cong., 2nd Sess
 
 
 [7]
 Aliter on the transfer by the widow. The devise would be 'netted' against what she surrendered as she did receive consideration of the necessary type. commissioner v. Seigel, 9 Cir., 1957, 250 F.2d 339; Commissioner v. Chase Manhattan Bank, supra; and Turman v. Commissioner of Internal Revenue, 35 T.C. 1123
 
 
 [8]
 On the subject of a windfall under another tax statute, it has been aptly said:
 'Granting the government's proposition that these taxpayers have found a hole in the dike, we believe it one that calls for the application of the Congressional thumb, not the court's.' Fabreeka Products Co. v. Commissioner, 1 Cir., 294 F.2d 876, 879, cited in The Hanover Bank, Ex'r v. Commissioner, 369 U.S. 672, 80 S.Ct. 1080, 8 L.Ed.2d 187.
 
 
 [1]
 Both cases are cited in Lang's Estate v. Commissioner, 9 Cir., 1938, 97 F.2d 867
 
 
 [2]
 Lang's Estate v. Commissioner, 1938, 304 U.S. 264, 58 S.Ct. 880, 881, 82 L.Ed. 1331
 
 
 [3]
 Rompel v. United States, S.D.Tex., 1945, 59 F.Supp. 483, rev'd United States v. Rompel (Herbst), 1945, 326 U.S. 367, 66 S.Ct. 191, 90 L.Ed. 137. This is the Texas companion case to the Louisiana case of Wiener v. Fernandez, E.D.La., 1945, 60 F.Supp. 169, rev'd Fernandez v. Wiener, 1945, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 upholding the constitutionality of the Revenue Act of 1942. Both cases were carefully pleaded, briefed, and decided. Their import was thoroughly understood in all of the community property states, as well as in Texas and Louisiana
 
 
 [4]
 Childress, Community Property in Administration of Estates in Texas, Tex.Inst., 5th Ann.Tax Con. 155, 177 (1957)
 
 
 [5]
 DeFuniak explains the reason for this:
 'The fact that where the husband dies the administration of the community property should be separate and apart from, arthough inside, the administration of the husband's estate which is taking place, seems not always to be understood. It must also be remembered that, although such an administration of the community property is taking place in order to pay community debts and accomplish a partition, half of the community property so being administered belongs not to the deceased husband but to the surviving wife, and always belonged to her from the moment of its acquisition during the marriage. * * * Administration of community property is a thing apart from ordinary administration, in that it is actually settling up matters relating to property which belongs in equal shares to the decedent's estate and to a living person and not merely the administration of property belonging entirely to the decedent's estate.' 1 DeFuniak, Principles of Community Property, Dissolution of Marital Community, 205, pp. 585, 586.
 
 
 [6]
 'Perhaps a better rule would be to fairly apportion these expenses between the estate and the surviving spouse on the basis of the time and effort expended on behalf of each estate. The services of the executor, the attorneys and accountants in seeing that the debts are paid and in getting half of the community into the hands of the surviving spouse are of benefit to the survivor's estate and some portion of these expenses may be equitably chargeable to such survivor.' Jackson, Community Property and Federal Taxes, 12 S.W.L.J. 1, 37 (1958)
 
 
 [7]
 Beveridge's phrase. Beveridge, 2 Law of Federal Law of Estate Taxation 181 (1956)
 
 
 [8]
 See Surrey, Federal Taxation of the Family-- The Revenue Act of 1948, 61 Harv.L.Rev. 1097 (1948); Anderson, The Marital Deduction and Equalization under the Federal Estate and Gift Taxes Between Common Law and Community Property States, 54 Mich.L.Rev. 1087 (1956). DeWind, The Approaching Crisis in Federal Estate and Gift Taxation, 38 Cal.L.Rev. 79 (1950). See also Momorandum Submitted by the Secretary of Treasury to the Senate Committee on Finance, March 1, 1948, Analysis of the Estate Gift Tax Provisions of H.R. 4790 (Revenue Act of 1948), reprinted in Warren and Surrey, Estate and Gift Taxation (1961). Lowndes and Kramer, Beveridge, and, not surprisingly, legal writers in the community states ahve found that after adoption of the 1948 Act the sky did not fall. Beveridge, Law of Federal Estate Taxation, Chap. 14 (1956); Lowndes and Kramer, Chap. 17 (1962). See Thurman, Jackson, Riehm, Nossaman, and Ray, cited in notes 17 and 18. See also Golden, A Decade with the Marital Deduction, 97 Trusts and Estates, 304 (1958)
 
 
 [9]
 See thurman, Federal Estate and Gift Taxation of Community Property, 1 Ariz.L.Rev. 253 (1959); Jackson, Community Property and Federal texes, 12 S.W.L.J. 1 (1958). Riehm, The Impact of Community Property Law on Federal Taxation, 4 S.W.L.J. 161 (1950)
 
 
 [10]
 For discussion of the widow's election and the marital deduction, see Ray, The Widow's Election-- A Study in Three Parts, 15 S.W.L.J. 85 (1961); Westfall, Estate Planning and the Widow's Election, 71 Harv.L.Rev. 1269 (1958); Brown, The Widow's Election as a Tax Savings Device, 96 Trusts and Estates 30 (1957); Brooks, The Tax Consequences of Widows' Elections in Community Property States, U.So.Cal.1951 Tax Inst. 83; Nossaman, Trusts Under The Revenue Act of 1948, U.So.Cal.1950 Tax Inst. 459
 
 
 [11]
 This is not a deduction for bequests of separate property, as such. Aside from the effect of community propety on the computation of the maximum allowable marital deduction, there is no difference partinent here between community property and separate property. Community property may qualify for the marital deduction. However, the amount of the decedent's interest in community property must be subtracted (along with deductions for administration expenses and claims against the estate) from his gross estate to arrive at an 'adjusted gross estate'. Section 812(e)(2)(B), Code of 1939. The marital deduction cannot exceed 50 per cent of this adjusted gross estate. Thus, the amount of the marital deduction is limited or determined by the amount of separate property
 
 
 [12]
 The approach we take is in keeping with Commissioner v Siegal, 9 Cir., 1957, 250, F.2d 339, affirming 26 T.C. 743 (1956). In that case the decedent's estate consisted entirely of community property. The husband's will created a testamentary trust with his widow as income beneficiary and his son as remainderman, and put his wodow to an election. The basic question was whether the value of the gift is reduced by the value of the property received by the donor from a third person. The court considered it all one transaction and permitted the reduction. The surrender by the widow of her community property rights, in effect, was a gift to the estate of the decedent to the extent that the value of the interest surrendered exceeded the value of the interest received. The Court spoke of the transaction as 'a contract supported by adequate consideration' and treated it as part gift and part exchange. To the same effect, see Chase National Bank, 25 T.C. 617 (1955), decided on other grounds, sub. nom. Commissioner v. Chase Manhattan, 5 Cir., 1958, 259 F.2d 231
 I would distinguish Helvering v. Butterworth, 1933, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, on the basis of the difference between the Pennsylvania widow's dower rights which had no value prior to her husband's death, and the Texas wodow's interest in community property, which belonged to her prior to her husband's death and could be surrendered as the price of acquiring an interest in propety which she did not heretofore own. See Brooks, The Tax Consequences of Widows' Elections in Community Property States, U.So.Cal.1951 Tax Inst., 83, 88.